[No. 12822.   Department One.   December 18, 1915.]

IVY PRESS, *Appellant*, v. A. McKECHNIE *et al.*, *Respondents*.[1]

CORPORATIONS — ILLEGAL BUSINESS — LIABILITY OF STOCKHOLDERS— LAWFUL CONTRACTS OF ILLEGAL COMPANY—PERSONS IN PARI DELICTO. Stockholders, fully paid up, are not individually liable upon a prior lawful contract made by an illegal investment company for printing and supplies, on the theory that they were partners in an unlawful enterprise, where the corporation was organized, and they became stockholders, in good faith, and upon discovering that its contract violated the law, all contracts were called in and the money refunded, and the company did not engage in any further unlawful business; especially where the printing contract was entered into by plaintiff with full knowledge of the nature of the corporation, upon investigation of and faith in its credit, and plaintiff later acquired stock for the purpose of taking corporate action on the claim against other stockholders, and thereby became a partner, and *in pari delicto* in the fraud, if any there was.

Appeal from a judgment of the superior court for King county, Albertson, J., entered December 31, 1914, upon findings in favor of the defendants, dismissing an action on contract, tried to the court. Affirmed.

[1]Reported in 153 Pac. 1067.

*Brightman, Halverstadt & Tennant* and *Halverstadt & Clarke,* for appellant.

*Moore, Wardall, Wardall & Martin,* for respondents Moore *et al.*

*Winter S. Martin,* for respondents Martin *et al.*

*Donworth & Todd,* for respondents Bowden *et al.*

*McClure & McClure,* for respondents Boynton *et al.*

*Charles A. Spirk,* for respondent Paxton.

MOUNT, J.—This action was brought to recover a balance of $3,100, alleged to be due for printing done by the plaintiff for the defendants. The case was tried to the court without a jury. Upon the trial the court found: First, that the plaintiff was a corporation duly organized under the laws of this state; second, that certain of the defendants were married; and then found as follows:

"(3) That on or about May 3, 1912, a corporation was duly formed under the laws of the state of Delaware by Winter S. Martin, Daniel O. Hastings and Harry W. Davis as incorporators, the name of said corporation being 'Continental Home Investment Company,' the certificate of incorporation of said corporation having been filed in the office of the secretary of state of the state of Delaware on said last named date, and the other steps required by the laws of the state of Delaware having been duly taken at the same time. A true copy of the certificate of incorporation of said Continental Home Investment Company is attached to the complaint herein and marked exhibit 'A'.

"(4) That said Delaware corporation was formed by said incorporators in good faith, and that neither the said incorporators nor any of the said defendants who have appeared in this action at any time had as a matter of fact any intention to commit any fraud whatever by means of said corporation.

"(5) That said corporation had, as originally incorporated, a capital stock of $1,000,000, which was later reduced to $100,000. That said corporation did not at any time have, and the said defendants did not at any time fur-

nish, or cause to be furnished for it, any capital in excess
of $3,800 aside from the subscription agreements, all of
which sums had long prior to the commencement of this ac-
tion been expended through the medium of said corporation.

"(6)    That each and all of the said defendants who have
appeared in this action, except defendants Boynton and wife,
thereafter acquired stock in said corporation, and did so in
good faith, without any fraudulent intent or design whatso-
ever, with the understanding and belief that said company
intended to carry on a legitimate business in a lawful man-
ner and by lawful means.

"(7)    That, irrespective of the powers of said corpora-
tion, and of the purposes thereof as they appear in said
certificate of incorporation, the real purpose of said corpora-
tion and the only business ever done by said corporation was
in truth and in fact to issue and sell a so-called investment
contract, a form of which is attached to the complaint herein
marked Exhibit 'C', together with such incidental business
as was necessary to be done by the defendants for the above
and foregoing purposes and business; that twenty-three of
said so-called investment contracts were actually sold, money
was collected thereon by said corporation, but that no such
contracts were sold in the state of Washington, and the plain-
tiff has never been the holder of any such contract; and all
said contracts were afterwards called in and the holders
thereof repaid the amounts advanced by them with interest.

"(8)    That said so-called investment contract is illegal
and is against public policy.

"(9)    That, between the 28th day of June, 1912, and the
7th day of September, 1912, the plaintiff, at the special in-
stance and request of the said Delaware corporation, did
printing for said Delaware corporation in printing supplies
for said Delaware corporation, a part of which supplies were
delivered to said Delaware corporation.  Said printing was
done under written contract between the plaintiff and said
Delaware corporation, which said written contract is now in
evidence in this cause.  That, prior to the furnishing of said
printing and supplies by plaintiff and prior to the making
of the contract therefor, plaintiff fully investigated the said
Delaware corporation's business and was fully advised as to
the same, and made said contract and furnished said printing

and supplies, relying upon the assets and credit of said corporation.

"(10)    That thereafter said Delaware corporation paid to the plaintiff, on account of said printing, two payments aggregating $2,863.14.    That the value of said printing at the contract price amounted to the sum of $5,963.14.

"(11)    That defendants Winter S. Martin, H. D. Moore and R. M. Wardall each acquired three shares of stock in said Delaware corporation of the par value of ten dollars each, and fully paid said corporation for the same by services.    Said Martin assigned his said stock and resigned as a director of said corporation in May, 1912.    Said Moore and said Wardall assigned their said stock and resigned as directors of said corporation in June, 1912, prior to the making of the contract mentioned in finding IX.

"(12)    That defendants Bowden and Gazzam jointly acquired stock in said Delaware corporation of the par value of $1,000, the certificate for which stock was issued to defendant Bowden, and said defendants Bowden and Gazzam paid in cash to said Delaware corporation the full par value of said stock, to wit, the sum of $1,000 in money in payment of said stock.

"(13)    That defendant Paxton, on or about the 1st day of September, 1912, acquired stock in said Delaware corporation of the par value of $1,000, and said Paxton paid in cash to said Delaware corporation the full par value of said stock, to wit, the sum of $1,000 in money in payment for said stock.    Said defendant never at any time prior to the commencement of this action had any knowledge of any contract with the plaintiff or of the furnishing of any printing or supplies by the plaintiff.

"(14)    That neither defendant F. H. Boynton or Kate Boynton, his wife, ever subscribed for, took or received any stock in said Delaware corporation.

"(15)    That on November 15, 1912, the plaintiff, being duly informed of all the facts and circumstances concerning said Delaware corporation, for the purpose of aiding in the collection of its claim against said Delaware corporation, caused Fred J. Perrine, the secretary, treasurer and managing agent of plaintiff, to attend a meeting of said Delaware corporation, and to acquire three shares of stock in said Delaware corporation, and to be elected a director of

said Delaware corporation, and said Fred J. Perrine in pursuance thereof took part in a meeting of the directors of said Delaware corporation held on November 15, 1912, for the transaction of the business of the said Delaware corporation, and voted as such director in favor of an assessment which at said meeting was levied against such of the stock of said Delaware corporation as had not been paid up in full."

From these findings the court concluded that the plaintiff was not entitled to recover from the defendants as individuals, and for that reason entered an order of dismissal. The plaintiff has appealed from that judgment.

A number of errors are assigned upon the findings made by the court; but these assignments are not relied upon either in the briefs of the appellant or in the argument. A perusal of the abstracts of the evidence convinces us that the findings of the trial court to the effect that the Delaware corporation, known as the Continental Home Investment Company, was organized in good faith by the incorporators, and that the defendants who afterwards purchased and paid for stock in the corporation purchased the stock in absolute good faith, not believing that the Continental Investment Company was doing, or intended to do, an illegal business; and that Mr. Perrine, the managing agent of the appellant, after the organization of the corporation in Delaware, fully investigated the affairs of the corporation and knew the objects for which the corporation was formed, and fully understood the business which the corporation intended to engage in, are sustained by the evidence. After knowing these facts, Mr. Perrine entered into a contract with the corporation to do certain printing for the Home Investment Company, aggregating $5,963.14. This printing was to be done from time to time as the investment company desired. Thereafter the printing was done, and payments were made thereon aggregating $2,863.14. The printing which was done consisted, among other things, of blank investment contracts, which the Home Investment Company afterwards put upon

the market. About twenty of these contracts were sold, all
outside of this state. Thereupon an opinion was rendered
by the attorneys for the company that these investment con-
tracts were illegal, because they were of such character that
they could not be performed by the company in case all of
such contracts were fully carried out. After the company
had been so advised by their counsel, these investment con-
tracts were called in and redeemed, and the money paid by
the investors was returned, with interest.

After all this had been done, and after the appellant knew
the condition of the company, as stated in the findings of
the court, Mr. Perrine, the manager of the appellant, at the
instance of the appellant, acquired shares of stock in the
corporation, and was elected an officer thereof; and an assess-
ment was levied upon the stock which had not been fully
paid, for the purpose of paying the appellant's bill.

Thereafter this action was brought, in which the appel-
lant seeks to hold the individual stockholders personally
liable as partners for the balance of $3,100 due upon the
contract for printing. It seeks to hold those who had fully
paid for their stock at the time the contract for the printing
was entered into, as well as those who purchased stock there-
after and fully paid for the same. It seeks to hold these
parties liable for the reason, as stated in its brief, that
"Parties cannot shield themselves from individual liability
by attempting to avail themselves of the corporation laws
when in truth and in fact the real purpose, and the only
purpose of the alleged corporation, is to conduct an illegal
business." Many pages of the appellant's brief are devoted
to argument to show that these investment contracts which
were issued by the company were illegal, and against public
policy, as the trial court concluded.

We think there can be no doubt that these contracts, for
the issuance of which the corporation was organized, and
which, at the time of its organization, it intended to issue,
were invalid and illegal. Many courts have held that, where

a corporation is organized for an unlawful purpose, the incorporators, and those perpetrating a fraud of that character, may be held as partners. But that rule does not control in this case, because it is conceded that the contracts which were actually issued by the Home Investment Company, and delivered to some twenty of its patrons, were illegal. When it was discovered that these contracts were illegal, the company called in the contracts, and returned, with interest, the money which they had received from such contract holders. We have no doubt that if the company had not voluntarily done so, it and the incorporators of the company would be liable upon such contracts.

It is shown that the plaintiff, by its manager, knew of the incorporation of the Home Investment Company in Delaware, and for what business and purposes it was organized. The appellant did not purchase investment contracts from the company, which are conceded to be illegal, but entered into a contract with the company for the purpose of furnishing it printed supplies. After the plaintiff had furnished these supplies, and before it had received full payment therefor, it became, in substance, a stockholder in the company, was elected a director, and took part in the affairs of the corporation. It now seeks to hold the other stockholders personally liable for the amount of its bill because the Home Investment Company, with which it had entered into a contract for printing, had issued several illegal contracts which were afterwards called in and redeemed.

If the appellant may hold the stockholders in the Delaware corporation personally liable, it is upon the ground that the corporation was fraudulently formed for an illegal purpose. If these respondent stockholders, who acquired their stock after the corporation was formed, and after the printing contract was entered into, and after the printing supplies were delivered, may be held to be parties to that fraud, and for that reason liable as partners, then it follows, for the same reason, that the appellant, a stockholder, is a partner

in the fraud in *pari delicto*.  In such a case, one partner cannot recover from another.  9 Cyc. 573-575; *Kwapil v. Bell Tower Co.*, 55 Wash. 583, 104 Pac. 824.

While the trial court found as a conclusion that the contracts which the Home Investment Company put out were illegal, and against public policy, it also found that the respondents who became stockholders in the Home Investment Company, and those who organized the corporation, did so in good faith; that they had no intention to commit any fraud whatever by means of said corporation.  These findings are supported by the fact that, after it was discovered that the investment contracts which the Home Investment Company were selling were illegal, it called the contracts in, and returned the money, with interest.  So it is plainly apparent that there was no actual fraud intended or committed. The articles of incorporation attached to the complaint show very clearly upon their face that the corporation was a legal and valid one, and authorized to do a legal business.

It is not, and could not well be claimed, that the contract for printing was not a lawful contract.  The evidence shows that, when the plaintiff entered into the contract with the Home Investment Company for doing the printing, it knew all the conditions upon which the Home Investment Company was organized; and it knew that the Home Investment Company could enter into a contract for the printing, as it did. It is plain from the record that the appellant entered into the contract relying upon the financial ability of the corporation.

It does not follow that, because a corporation has made some illegal contracts, all its contracts are thereby avoided, or that the stockholders become personally liable as partners.  No case is cited to that effect.  We are clear that the plaintiff, if entitled to recover at all, must recover against the corporation, and may not, in the first instance, maintain an action against the individual stockholders personally for printing furnished to the Home Investment Company.  It is

not claimed by the appellant, as we understand its position, that the contract for the printing with the Home Investment Company is of itself invalid; but its contention is that, because the corporation was organized for an illegal purpose, therefore all its contracts are invalid, and the individual stockholders are liable as partners. It is probably correct to say that, when a corporation is formed for the purpose of doing an illegal business, it is illegal, and the stockholders who take part in a fraud which is perpetrated upon an innocent party may be held as partners by that innocent party. But in this case it was found by the trial court that this corporation was formed in the state of Delaware in good faith; and the incorporators and stockholders, after it was formed, dealt in good faith, not intending to violate any law. When it was found they had violated the law, they immediately retraced their steps. Under such circumstances, we are cited to no case which holds that the plaintiff, who had entered into a valid contract, may treat that contract as invalid, and sue the original stockholders, or subsequent stockholders, as partners in the illegal enterprise.

The appellant, having dealt with the Home Investment Company as a corporation, knowing the business it intended to do, and knowing all about the affairs of that corporation, and having entered into a contract with that corporation which is clearly valid, cannot now hold the stockholders personally liable by claiming that the corporation had no legal existence.

In the case of *Wilder Mfg. Co. v. Corn Products Ref. Co.*, 236 U. S. 165, where parties dealing with a corporation undertook to question its corporate existence on the ground that it was organized to accomplish an evasion of the anti-trust laws, the supreme court of the United States, speaking through Chief Justice White, said:

"Having dealt with the Refining Company as an existing concern possessing the capacity to sell, speaking generally the assertion that it had no legal existence because it was

an unlawful combination in violation of the Anti-Trust Act was irrelevant to the question of the liability of the Manufacturing Company to pay for the goods since such defense was a mere collateral attack on the organization of the corporation which could not be lawfully made."

In *American Radiator Co. v. Kinnear*, 56 Wash. 210, 105 Pac. 630, 35 L. R. A. (N. S.) 453, quoting from *Whitney v. Wyman*, 101 U. S. 392, we said:

"The corporation having assumed by entering into the contract with the plaintiff to have the requisite power, the parties are estopped to deny it. . . . The restriction imposed by the statute is a simple inhibition. It did not declare that what was done should be void, nor was any penalty prescribed. No one but the state could object. The contract is valid as to the plaintiff, and he has no right to raise the question of its invalidity."

See, also, *Kwapil v. Bell Tower Co., supra.*

We are satisfied, therefore, upon the whole record, that the Home Investment Company, incorporated in Delaware, was incorporated in good faith, and even though the business which it undertook to do was illegal, the appellant is not authorized to maintain this action against the individual stockholders as partners.

The judgment of the trial court is therefore affirmed.

Morris, C. J., Ellis, Chadwick, and Fullerton, JJ., concur.