164

MEMPHIS CASTING WORKS, Inc. v. BEARINGS &
TRANSMISSION CO., Inc.—243 S. W. (2d) 145.

Western Division.    At Jackson.    July 10, 1951.

Hillsman Taylor, and Robert E. Joyner, both of Memphis, for plaintiff-in-error.

A. L. Heiskell, and Charles L. Glascock, both of Memphis, for defendant-in-error.

SWEPSTON, J. The declaration in this case was filed by Memphis Castings Works, Inc., to recover on account in the sum of $1137.01 for castings made for and sold to and accepted by defendant.

Defendant filed a cross-action to recover damages for breach of contract for the manufacture of castings which were to be used by cross-plaintiff in the manufacture or assembly of electric lawn mowers. It was alleged that by reason of such breach and refusal to carry out said contract cross-plaintiff was unable to assemble and deliver the mowers on contracts it had made in good faith with solvent purchasers, by reason of which said purchasers cancelled said contracts and caused it to lose substantial profits as well as other damages.

The issues were tried to a jury who rendered a verdict for $11,137.01 on the cross-action.

On cross-defendant's motion for a new trial alleging passion, prejudice, etc., the court found the verdict excessive and suggested a remittitur of $1137.01, which was accepted by cross-plaintiff and it has not appealed from same.

Cross-defendant has appealed and assigned error.

There is no assignment that there is no evidence to support the verdict. Hence we are not called upon to review the evidence for such purpose.

■ The 6th assignment relating to the preponderance of the evidence is not a proper one on appeal from a jury trial. In such a situation all issues of fact are settled by the verdict of the jury, whose sole and final province and function it is to determine the preponderance.

■ The 1st assignment is that the verdict is so excessive as to indicate passion, prejudice or unaccountable caprice; that there is no basis in law or fact to sustain same.

Confining the question at this point to the facts or evidence, we think there is no merit in the assignment.

The law will be treated under the 3rd assignment.

There was evidence in behalf of cross-plaintiff tending to show damages in a much larger amount than the verdict.

The evidence showed that it had made three contracts with solvent purchasers for 1400 electric lawn mowers, in the manufacture of which the above mentioned castings to be made by cross-defendant were to be used. On two of these contracts which were dealer contracts amounting to 900 mowers, the net profit would have been $32.50 each or $29,250; on the third contract which was a distributor contract, for 500 mowers the net profit would have been $20 each or $10,000, making a total on all three of $39,250. The difference was due to the higher price charged the dealer than that charged the distributor. The verdict therefore was well within the evidence on these three contracts alone and was not excessive.

■ The 2nd assignment is that it is patent that the jury mistakenly added the amount of the account of $1137.01, alleged to be due the plaintiff, to the amount of damages claimed by cross-plaintiff instead of deducting same as a set off as the court instructed the jury to do.

168

This assignment is not completely phrased but counsel for defendant in error has assumed it to be probably a part of the 1st assignment and we think it was so intended.

It does seem obvious that the jury was guilty of caprice in respect to this identical figure. The trial court thought it excessive to that extent and he struck it off the amount of the total verdict. We think the jury were confused in that they added when they should have subtracted. The verdict is to this extent capricious. Hence we suggest a further remittitur of $1137.01, making the net judgment $10,000 less $1137.01, or $8862.99; otherwise this assignment will be sustained and a new trial ordered.

Assignments 3, in part, and 5 relating to refusal of special requests nos. 3, 6, and 7 raise the question of the proper measure of damages, that is, whether the general rule applies to effect that the measure of damages for the non-delivery of goods is the difference between the contract price and the market price, or whether under the proof in this case loss of anticipated profits from the sale of the mowers may be recovered, by reason of special circumstances.

The court charged the jury in part as follows:

"The Court instructs you Gentlemen of the Jury that while ordinarily the loss that a buyer sustains from the seller's non-delivery of goods is the difference between the contract price and the market price, or price at which the same goods might be purchased elsewhere by the buyer; but that where there is no available market, or where the goods are being manufactured specially for the buyer according to his own specifications, or where the business of the buyer is seasonal and he has no opportunity to obtain the same goods from another seller within time to supply his contracts, then the buyer may

recover such damages as naturally arise according to the usual course of things from the seller's breach; the buyer may recover such damages as may reasonably be supposed to have been contemplated by the parties at the time of making the contract as the probable result of its breach.

"Profits shown to have been lost by the purchaser may be recovered where they were part of the contract; where an engagement to pay them can be found in the terms of the contract or implied from the circumstances in the light of which it was made; and where they are not in fact remote or speculative but are proved to a reasonable certainty."

We think this was a correct charge and follows the rules laid down and applied in Chisholm & Moore Mfg. Co. v. U. S. Canopy Co., 111 Tenn. 202, 77 S. W. 1062, where the facts were substantially analogous to the facts found by the jury in this case on evidence sustaining such findings.

The case briefly as made by the cross-plaintiff is as follows.

It had been a going concern for three years. In early 1949 it began experimenting with making this type of mower. During the summer months it procured the cross-defendant, a foundry, to make some castings to be component parts of the complete mower. In October it negotiated with the foundry a contract for 10,000 sets of these castings to be made as soon as the necessary patterns could be supplied by cross-plaintiff. It then made contracts with the dealers and distributor as stated above for the sale of 1400 mowers to be delivered in time for the 1950 market, which of course is seasonal.

It made arrangements for the necessary financing and made contracts for the procurement of the necessary parts

and materials to be used in the mowers. It delivered the patterns to the cross-defendant about December 21, 1949, but the latter delayed so long in getting into substantial production of the castings that cross-plaintiff could not supply its contract customers with mowers and the latter cancelled their contracts.

That finally February 21, 1950 cross-defendant refused to proceed with the contract for making castings. That same or similar castings were not available on the open market because they were of special design for use on this particular type of mower and they could not be obtained by cross-plaintiff on special order in time to enable it to fill orders for mowers. That cross-defendant knew at all times that cross-plaintiff intended to make mowers for sale and was taking orders that had to be filled in time for the 1950 seasonal market.

Code Section 7260, the Uniform Sales Act, is but a re-enactment of common law rule stated in the Chisholm case and is applied in Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 206 S. W. (2d) 432.

In this case plaintiff had an established business as a coal dealer. Defendant breached its contract to sell coal to plaintiff. The special circumstances found to be in contemplation of the parties to the contract were the existing World War in 1943, the shortage of coal and control by the Government making it unavailable on the open market at the time of breach of contract. Hence, on reasonably certain proof, recovery for loss of anticipated profits was allowed.

In the Chisholm case there was a new business organized to make and sell mosquito bar canopy frames, in connection with which a special bracket, the invention of one of the company's officers, was the subject of the breach of contract by the concern which had undertaken

the manufacture of same for the Canopy company. It was shown that the bracket was not available on the open market. Hence on reasonably certain proof, recovery was had for loss of anticipated profits on the orders for canopies, the damages being within the contemplation of the parties to the bracket contract.

These assignments are in this respect overruled.

■ The 3rd assignment further complains that one of the contracts for mowers which was cancelled on January 24, 1950 was cancelled before the breach by cross-defendant on February 21, 1950.

The proof by cross-plaintiff was that the contract had been breached already on December 31, 1949 and that on February 21, 1950 cross-defendant notified it that there would be no further effort to comply and it was quitting the foundry operation altogether. The jury accepted the cross-plaintiff's evidence. Hence this is overruled.

■ Again complaint is made that the delivery dates on the mower contracts were impossible of fulfillment. There is no discussion of this point in the brief. Hence, under our decisions we treat same as waived.

■ Referring again to assignment V, requested instruction No. 2, which we need not quote, it is apparent that counsel's complaint is grounded upon his contention that the only contract shown in the evidence is what he alleges is the letter of January 10, 1950 written by cross-plaintiff to cross-defendant, which the latter denies having received and denies there was ever a contract for 10,000 sets of castings. Cross-plaintiff, however, testified he had the verbal contract in October 1949, that the same was verbally confirmed in December and confirmed again by this letter setting out the prices of the different kinds of brackets making up a set, which prices had been increased on January 9 from $2.87 to $4.49 on the insistence

of cross-defendant, who had cross-plaintiff in a hole because of the already existing delay.

The court fully instructed the jury that they must find there was a contract before they could find against cross-defendant. They found there was. In any event the letter did not purport on its face to be the contract but only a confirmation of one already made, so it would not matter whether it was received by cross-defendant. This is overruled.

■ Referring to assignment V, requested instruction No. 5, counsel does not state in the assignment or in the brief wherein the failure to give said instruction is error or how it prejudiced cross-defendant. Hence, the same is overruled without discussion. See Rule 11(2).

Assignment IV complains that "It was error for the Court to instruct the jury that the defendant in cross action might recover both loss of the business and for the difference in the price of the property alleged to have been bought which charge is as follows:"

Then follows the excerpt from the charge quoted, supra, under assignments 3 and 5.

Obviously counsel is in error and the assignment is overruled.

Accordingly, if cross-plaintiff accepts the further remittitur, a judgment in its favor for $8862.99, with interest from September 20, 1950, and costs will be entered here; otherwise a new trial will be ordered and costs of the appeal taxed against cross-plaintiff.

Baptist, P. J., and Davis, Special Judge, concur.