PERRY JENNINGS, Petitioner

*v.*

JESSE LAMB, Respondent

(*Knoxville,* September Term, 1956)

Opinion filed December 7. 1956.

(1)

2

Kenneth D. Higgins, Athens, J. Dudley Culvahouse, Decatur, for complainant.

H. M. Gregory, Athens, for defendant.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

We granted *certiorari,* the case has been argued and we now dispose of same.

Jesse Lamb located a boundary of timber containing an estimated minimum of 1,000,000 board feet of timber not including oak. He was unable to finance the purchase of same by himself so he called on Perry Jennings to assist him. Jennings has been engaged for several years in the business of finishing rough lumber and selling it as dressed lumber. Jennings furnished $15,000 of the $25,000 necessary to purchase the timber and took a mortgage on the timber as collateral security. The two men then on March 9, 1953, entered into a contract of purchase and sale whereby the said $15,000 was treated as an advance payment on the purchase price of 850,000 board feet of lumber, or 85% of all timber, except oak, cut and manufactured off the tract of land described in the contract. Lamb agreed to deliver enough lumber within one year from date to take care of the $15,000 and agreed to sell the 85% of the lumber at the current market price at the time of delivery, with the further provision that in the event of disagreement as to the current market price, the same would be settled by three arbitrators. Lamb delivered enough rough lumber to repay the $15,000, but he became dissatisfied with the price he was receiving from Jennings, so in August 1953, a list of prices was agreed upon with reference to various dimensions of lumber and it was agreed that this price list was to be effective until August 22, 1953, and could be changed after that date if either party be not satisfied.

Shortly thereafter Lamb began to sell lumber elsewhere so that as a result of his activities in this regard he delivered a total of only 482,928 board feet of lumber to complainant, whereas he should have delivered under the contract at least 850,000 board feet. A scarcity of lumber developed in that area so that Jennings was not able to buy lumber on the open market with which to fill his existing orders and the proof shows that he could have sold every foot of the lumber he was entitled to receive at a net profit to him of $15 per thousand, which figure was accepted by both lower Courts. .

Jennings filed this bill for specific performance and for an injunction against the sale by Lamb of lumber to others and requiring him to deliver the balance of the quantity to Jennings. The injunction was later dissolved upon Lamb giving the $5,000 bond to cover all damages resulting from any breach of contract. Lamb disposed of the rest of the rough lumber so that the question of specific performance became moot, as held by the Chancellor and the Court of Appeals. A reference was ordered in order that the Master might determine whether or not Lamb had breached his contract and, if so, the amount of damages to which Jennings would be entitled. After considering the proof the Master reported that the contract had been breached by Lamb and that Jennings was entitled to something over $9,000 damages.

On exceptions filed to the report the Chancellor filed a memo in which in part he said, ''The proof on the question of damages is very spotty and unsatisfactory. Complainant was engaged in finishing rough lumber and reselling it. Defendant had contracted to sell complainant lumber sawed from timber on the Borin tract at current market prices. This defendant failed to do. But—ac-

tually disposed of 608,915 feet of lumber to third parties, as found by the Clerk and Master and concurred in by the Court. Complainant estimated that his profit upon a resale of this lumber after it was finished was $15.00 per thousand feed—or a total of $9,133.73. This was the amount of damages reported by the Master, as aforesaid.''

The Chancellor then stated that proof showed that Jennings had certain unfilled orders which he was unable to fill on account of the breach. The Chancellor, however, was not satisfied with the proof as to unfilled orders. He then referred to the case of *Black v. Love & Amos Coal Co.*, 30 Tenn.,App. 377, 206 S.W.2d 432, and said this: ''Thus, as said before, the Court is not inclined to go along with the theory that the complainant is entitled to damages based upon an estimated profit upon the total amount of lumber which defendant failed to deliver under his contract. Something more than this is certainly required in my opinion to prove damages. This lumber was contracted for at a price based upon the the 'prevailing market' and as said in the Amos Coal Co. case, *supra,* this contemplated an available market by which to fix a contract price and thus, they did not contemplate the special circumstances upon which complainant's claim is based, to-wit: that he could not buy other lumber in place of that delivered because there was no available market, and therefore, lost the profits he claims he would have made by selling this lumber in the course of his business.

''Thus the cause will be re-referred to the Master who will hear proof if the complainant desires to offer it, as to the exact amount of unfilled orders complainant experienced due to defendant's failure to deliver according

to his contract and due to complainant's failure to obtain other lumber in place of that not delivered. Complainant is also called upon to prove with greater certainty the amount of profit he derived or would have derived from the manufacture of lumber and its resale. The defendant, of course, will be entitled to offer proof consistent with his theory that complainant did not sustain any damages. * * *''

On this re-reference after hearing proof, the Master reported that Jennings had firm orders that were unfilled for 226,955 feet, which at $15 per thousand net profit on the processing of said lumber entitled Jennings to damages of $3,404.33. The Master further found that there were numerous other orders mentioned but most of those orders referred to truckers with whom Jennings did not have orders for any specific amount of lumber and he therefore eliminated those orders.

On exceptions filed the Chancellor filed a memo stating in part as follows: ''As said by the Master, there is some proof of unfilled orders principally by interstate truckers who shopped around from one place to another buying lumber and transporting it to distant points in Kentucky, Indiana and other places. But—as also observed by the Master there was no obligation on the part of anybody to sell or anybody to buy. It was simply a take-it or leave-it proposition.''

Thus, the report on the re-reference was confirmed by the Chancellor in the amount of 3,000 odd dollars.

The Court of Appeals, among other things, in affirming the decree below, said this: ''The Master and Chancellor have concurred in holding, in effect, that, in the absence of an order, complainant's profits would be classed as speculative. The difference between profits

on orders in hand and profits to be expected from a favorable market demand involves a finding of facts. We cannot say that there is not a sound factual basis for differentiating them. Where there is an order, the price, lengths, sizes and grades are fixed and the order is binding until withdrawn. This is not the case where a prospective buyer merely expresses an interest in buying lumber at an unnamed price and where quality and sizes are not stipulated. The business of the truckers eliminated by the Master and Chancellor could reasonably be so classified. That in turn, was a question of fact. The determination of which by a concurrent finding of the Master and Chancellor is binding upon appeal the same as the verdict of a jury. *Black v. Love & Amos Coal Co., supra,* and cases therein cited.''

■ We are of opinion there is no evidence to sustain the action of the Master, the Chancellor and the Court of Appeals. They have evidently failed to appreciate the effect of the clear, positive and uncontradicted testimony of two regular customers of Jennings that when they heard he had this rough lumber contracted for, each one of them offered to buy the entire output of finished lumber from Jennings; Jennings was an established businessman in that business for a number of years, so much so that the Master and the Chancellor accepted his figures that his net profit on processing lumber was $15 per thousand, to be arrived at by adding $22 gross to the resale price of all lumber with a processing expense of $7 and no complaint is made thereon. Hence in view of this positive proof that he could have sold all the lumber in the regular course of trade on a scarce market with the mark-up of his fixed profit, plus the fact that Lamb did sell all his rough lumber to some-

body else, it was not necessary for Jennings to prove that he had firm orders for all of the lumber at the time the contract was made or at any subsequent time; in the case of *Black v. Love & Amos Coal Co., supra,* Mrs. Black was allowed to recover loss of profits that she would have made on selling the coal in the ordinary course of business without any proof of firm orders, because she offered evidence of her past performances as a maker of profits.

On the other hand—where the business is new and has not proved itself to be a profit making business, it is necessary in order to avoid speculative features for the plaintiff to prove that he had firm orders. These were the facts in *Chisholm & Moore Mfg. Co. v. United States Canopy Co.,* 111 Tenn. 202, 77 S.W. 1062, and in *Memphis Casting Works v. Bearings & Transmissions Co.,* 35 Tenn.App. 164, 243 S.W.2d 145, which is discussed in the case of *Burge Ice Machine Co. v. Strother,* 197 Tenn. 391, 407, 273 S.W.2d 479. Likewise, in the Strother case, his was a new business and he had no firm orders for the resale of the strawberries which he had contracted for with the growers, and thus we held that his damages were too speculative.

Therefore, it seems to us that the concurrence of the Master, the Chancellor and the Court of Appeals is with reference to an undeterminative point and, therefore, is not binding on this Court.

With reference to notice of special damages, it appears from 46 Am.Jur., p. 823, sec. 699, that there is a conflict of authority, but at the top of page 824, first paragraph, it is stated: ''Where the special damages claimed are sufficiently certain and proximate to avoid

objection that speculative or remote damages are not recoverable, it is held by the weight of authority that the seller's knowledge that the buyer is a dealer in the kind of goods purchased is sufficient to impute to the former notice of the fact that the goods are intended for resale and to charge him upon his breach of sale contract with special damages based on the buyer's resale of the goods in the ordinary course of business, although the seller had no knowledge of any actual resale or specific customer to whom the goods were intended to be resold and there was none at the time of the original sale.''

Among the cases cited in note 9 to the above text is *Northwest Auto Co. v. Harmon,* 9 Cir., 1918, 250 F. 832. In that case the evidence showed that the manufacturer had breached the contract, that the dealer had sold all cars that had been delivered to it, had contracts for a part of the remaining cars due it on the contract and could easily have sold all the rest, as it appeared he was an established dealer. Held—he was entitled to recover the profits lost on the whole contract.

The holding of the lower Courts that he could not recover for loss of profits on anything but the firm orders is properly challenged by an assignment of error and it seems to us the point is well taken in the light of what was allowed to be done in *Black v. Love & Amos, supra.* All of the equities in this case are on the side of the complainant Jennings. It seems to us that if the lower Courts were correct in allowing him any loss of profits (and defendant has not challenged that ruling), he should be allowed loss of profits on the total amount of lumber due but not delivered, regardless of the question of firm orders, because he proved with reasonable certainty that

he could have sold every foot of the lumber in the ordinary course of his business.

The decree below is accordingly modified and a decree will be entered here against defendant Lamb for $9,133.73, with interest at 6% from December 9, 1955, and costs, and against W. M. Cagle, L. D. Ford, C. J. Wade, Earl Allen, and Edd Wilson, sureties on his performance bond to the extent of same, to-wit: $5,000.

The Court desires to commend the Clerk & Master, Mr. J. F. Gallaher, for the excellent form of the transcript and index to same.