No. 20,581.

H. F. BAGBY and F. J. HORTON, Partners as BAGBY & HORTON, *Appellants,* v. C. A. STRAUB et al. [Partners as THE EASTERN KANSAS OIL COMPANY, Limited], *Appellees.*

### SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Oil—Breach of Contract—Evidence—Additional Findings Required.* The plaintiffs having introduced evidence from which might have been found the market price of fuel oil for the remainder of the period during which the defendants contracted to furnish the same to the plaintiffs, and the damages for such failure, held that it was error to refuse the request for such additional findings and a conclusion of law as to the plaintiffs' additional recovery, if any.

2. SAME—*Additional Findings—Conclusions of Law.* This refusal being the only material error, the cause is ordered remanded for the sole purpose of making such additional findings of fact and conclusion of law, from the evidence already adduced, and rendering such judgment as they may require.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed November 10, 1917. Reversed in part.

*S. A. Gard, G. R. Gard,* and *Baxter D. McClain,* all of Iola, for the appellants.

*Charles H. Apt,* and *Frederick G. Apt,* both of Iola, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiffs sued to recover damages for breach of a contract for the sale of fuel oil, and appeal from an order of the court refusing to make additional findings of facts and conclusions of law adding to the amount of recovery, and for refusal to strike out certain findings.

By the contract the defendants were to sell to the plaintiffs 4,000 to 6,000 barrels of fuel oil a month for twenty-four months. After having complied with the agreement for some time they served on the plaintiffs a written notice of rescission, based on the failure of the plaintiffs to make a prompt payment. It appeared from the evidence that the plaintiffs resold all the oil to a cement and brick company, and that shortly after the attempted rescission on the part of the defendants this brick company went out of business. The trial court found that the plaintiffs made no other contract for the sale of the oil and allowed damages only up to the time of the failure of the brick company. The plaintiff moved for additional findings as to the price during the remainder of the contract period, and the damages for such period as measured by the difference between the contract price and the market price, and that the court allow such additional amount.

The effect of the findings and conclusions as made by the trial court is to absolve the defendants from any liability under the contract from the time of the failure of the cement and brick company, on the theory, evidently, that as the only profit made by the plaintiffs arose from resales to this plant, and as no contract for resale was made with any other party, the plaintiffs failed to show any loss after the failure of that company. One of the plaintiffs testified that the only business they did was the contract with the defendants and the contract with the cement and brick company; that they never attempted to do any other business and had nothing to do with any other contract.

Counsel for the defendants say in their brief that when the one consumer went out of business the only market the plaintiffs had was gone, that there was no evidence, and the court

could not speculate for them, as to what they might have done had they procured other customers. The plaintiffs, however, put on the stand a witness who testified that he was engaged in the oil refinery business in Chanute and was acquainted with all the published changes and the price of crude oil from the year 1910 up till October 1, 1914; that the market quotations published by the Prairie Oil and Gas Company govern in that field. The quotations were given, although he said that there was no general market price, and he could not say there was a general quoted price; there had never been an outside market price for fuel oil the same as crude oil, not a general market price—no posted price. One of the plaintiffs testified that he was familiar with the prices of oil during all the time covered by the contract, that they found a market for the oil in Chicago at a price that would have netted them $1.05 to $1.10 a barrel, which would have made the net price to plaintiffs at Moran 74 cents a barrel. That the plaintiffs were in correspondence with other cement companies and had frequent inquiries for fuel oil. That the demand for fuel oil was quite general and quite insistent; that on the breach of the contract by the defendants they sought all over the adjacent oil territory to buy fuel oil with which to fulfill their contract with the cement company and could not buy it at less than $1 a barrel f. o. b. producer's plant.

"Q. Do you know what the market conditions for fuel oil were at the time this contract was rescinded by the company? A. There was an excellent market for the fuel oil at the time.

"Q. Could you have readily disposed of the oil had they continued to ship you, at places other than the Lumberman's. Cement & Brick Company? A. We could."

He further testified that he made a trip to Chicago in December, 1912, and located several large consumers there, and a trip to Kansas City whose purchasing agent quoted him $1.05 a barrel for a year's supply at that place. Another testified that from February, 1913, to and including March, 1914, there was an insistent demand for fuel oil, the demand as great as the supply and "the best market we ever had."

It appears that upon rescission of the contract the defendants began shipping to the plaintiffs' former customer and so continued until the latter failed.

Bagby v. Straub.

From the foregoing it is clear that the court might have found the value to the plaintiffs of the oil, had its shipment been continued up to the end of the contract period. Does the fact that they did not actually make a contract when they knew that the plaintiffs had refused to furnish oil any longer preclude them from recovery? The only apparent justification the court found for the cessation of the shipments was that the plaintiffs' one customer had failed in business. After the attempted rescission the plaintiffs demanded a compliance with the contract, but without avail. They were entitled to a finding as to the market price of the oil f. o. b. defendants' works, and also to a finding as to the damages sustained, if any, by the plaintiffs for failure to continue the shipments during the remainder of the contract period.

If, as a matter of fact, the plaintiffs could upon the continued receipt of the oil after the failure of their former customer have readily disposed of it at a profit, and if, as testified to by one of them, they could have contracted for a year at a fixed price elsewhere, it is ascertainable from the evidence what profit they might have received. While there may not have been in the ordinary acceptation of the term a market price of the oil at the defendants' works, it can be found from the evidence what it would have been fairly worth there, and how much it would have cost to transport it to the places where it could have been sold.

Certain other matters are presented for consideration and discussed in the briefs, but the only material error found is the refusal to make the requested additional findings of fact and conclusion of law.

The judgment is reversed for the purpose only of making such findings and conclusions from the evidence already adduced, and for such further proceedings in accordance herewith as may be proper.