No. 22,223.

H. F. BAGBY and F. J. HORTON, Partners as BAGBY & HORTON, *Appellees,* v. C. A. STRAUB et al. [Partners as THE EASTERN KANSAS OIL COMPANY, Limited], *Appellants.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Oil—Breach of Contract — Evidence — Findings.* The evidence held sufficient to support a finding of the market price of fuel oil during a certain period.

2. SAME—*Sale of Oil—Breach of Contract—Action for Damages—Re-referred to Trial Court for Further Proceedings.* In view of the possibility that the judgment appealed from was affected by a misunderstanding of the purpose of this court in a former remand, it will be set aside or allowed to stand according to whether or not it was influenced by a belief on the part of the trial judge that the mandate required the making of a certain finding irrespective of his own judgment of the truth and weight of the evidence on which it was based, the trial court to apply this ruling according to its knowledge of the fact in that regard.

3. SAME—*Sale of Oil—Breach of Contract—Measure of Damages.* In an action against the seller for refusal to complete the performance of a contract to furnish at a stated price from 4,000 to 6,000 barrels of fuel oil per month for two years, a provision being added that the buyer must take the maximum amount if offered, the liability of the seller, where it is measured by the ordinary rule of the difference between the contract and market price, is based upon the nondelivery of the minimum amount only, although deliveries of an intermediate amount had been made while the contract was being carried out.

4. NEW TRIAL—*Motion Denied—No Error.* The overruling of a motion for a new trial on the ground of newly discovered evidence held not to have been erroneous.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed October 11, 1919. Modified.

*Charles H. Apt,* and *Frederick G. Apt,* both of Iola, for the appellants.

*S. A. Gard, G. R. Gard,* and *Baxter D. McClain,* all of Iola, for the appellees.

The opinion of the court was delivered by

MASON, J.: The defendants made a contract by which they agreed to furnish to the plaintiffs, for a period of two years, beginning October 1, 1912, from 4,000 to 6,000 barrels of fuel oil at Moran, in Allen county, at 58 cents a barrel. They made deliveries upon the contract until February 14, 1913, when they refused to proceed further under it. The plaintiffs brought suit for breach of contract and obtained a judgment for $1,830.82, which was found to be the amount of the damages they had sustained up to May 2, 1913, at which time the only customer with whom they had a contract for the disposal of the oil became bankrupt and ceased business. The plaintiffs appealed on the ground that they were entitled to recover an additional sum for damages accruing after that date, and the defendants in the same proceeding asked a reversal on the theory that they were not liable in any amount. This court approved the judgment so far as it established a liability of $1,830.82 up to May 2, 1913, but reversed the case for further proceedings with reference to the plaintiffs' claim for damages thereafter sustained. (*Bagby v. Straub*, 101 Kan. 608, 168 Pac. 1098.) In the opinion it was stated that, although other matters had been presented for consideration, the only material error found was the refusal to make additional findings with respect to the market price of the oil after May 2, 1913, and award the plaintiffs a further amount based thereon. This necessarily involved an approval of the orders of the trial court in other respects, including the findings and conclusions theretofore made. On the remand of the case the trial court gave the plaintiffs a judgment for the additional sum of $11,294.71, and the defendants appeal.

The defendants seek to renew a contention made in the former appeal, that their refusal to carry out the contract was justified by a breach of its conditions by the plaintiffs. That matter, however, together with other challenges of the correctness of the original findings and conclusions, is set at rest by the decision then made, which left nothing to be determined excepting the liability of the defendants accruing subsequent to May 2, 1913. The question now to be considered is whether error was committed in fixing that liability at $11,294.71. This

estimate of the plaintiffs' damages is based upon a finding sub-
stantially to the effect that the market price of the fuel oil be-
tween May 2, 1913, and October 1, 1914, averaged 73 cents, or
15 cents above the contract price. The defendants assert that
this finding was not supported by the evidence, and that it did
not result from an independent weighing of the testimony by
the trial judge, but from the belief on his part that he was con-
strained thereto by the mandate of this court.

1. One of the original findings reads as follows:

"I further find that soon after the execution of contract between
parties hereto fuel oil commenced and continued to advance in price,
reaching its highest price in February, 1913, to-wit: $1.05 per barrel;
that during the entire time covered by said contract there was a steady
demand for fuel oil; the latter part of the year 1912 and the first one-half
of year 1913, the demand for fuel oil was great and prices good; no fuel
oil during such period could be purchased for as low a price as fifty-eight
cents (58c) per barrel f. o. b. cars at refinery in this section of the
country."

The expression "such period" in the last clause quoted ap-
pears to refer to "the entire time covered by said contract."
Possibly it may refer to "the latter part of the year 1912 and
the first one-half of year 1913." In either event, it recognizes
a demand for the oil after May 2, 1913, and shows liability on
the part of the defendants after that time, unless on the theory
that no definite amount could be arrived at from the evidence.
No witness undertook to say in so many words that there was
an established market price for fuel oil at Moran, or in that
field, and none testified to a specific estimate of such market
price. Nevertheless, we think, as indicated in the former
opinion, there was evidence from which the existence of a mar-
ket price, and its amount, could readily be determined. The
fuel oil referred to is a by-product of the refining of crude oil—
it is the residuum after the gasoline and kerosene have been
extracted. The manager of a refinery at Chanute testified that
fuel oil had no general quoted or published market price, as
crude oil had; that its price depended to some extent upon that
of crude oil, and fluctuated accordingly, but not uniformly; that
during the period in question there was an exceedingly good
demand for it—a steady demand and a ready sale; that his
company sold theirs to the best possible advantage, but usually
the prices received were about what other outputters charged—

Bagby v. Straub.

that there was usually not much· change in prices—that they usually ran pretty uniform; and that there was no reason why the market price should not be 'the same at Moran as at Chanute. He .then gave the average price received by his company for each month from February, 1913, to March, 1914, ranging from 65 to 81 cents. Another operator of a refinery, who had bought and sold fuel oil for a number of years, testified that there was a ready market in that field; that the prices he received were practically the same as over the entire field. He then gave these prices by months, running from 71.5 to 89.46. Other evidence having a corroborative tendency is mentioned. in the former opinion. This testimony would seem to indicate that, while the market price of fuel oil was not standardized to the same extent as that of crude oil, for instance, and could not be ascertained by merely turning to the quotations of a particular date, an estimate could be made, without much difficulty, which would be reasonably accurate. We think that the evidence was sufficient to support a finding that the average market price was 73 cents, the basis on which the amount of the judgment was arrived at.

2. The additional findings of the trial court were introduced by the statement that they were made "in the light of the mandate and opinion of the Supreme Court of the State of Kansas, . . . and in accordance therewith." The finding with regard to market price read as follows:

"That fuel oil is a commodity having no regular quoted market price; however, under the evidence adduced upon the trial of the cause, in the light of the mandate and opinion of the Supreme Court, filed herein, and the observations made therein by said court, concerning such evidence, the court now finds that during the whole period intervening between May 2, 1913, and October 1, 1914, a period of sixteen (16) months and twenty-nine (29) days, the plaintiffs could have realized a net profit of fifteen (15c) cents per barrel had the defendants furnished same upon orders of plaintiffs under their contract before referred to at the contract price of fifty-eight (58c) per barrel, f. o. b. cars at Moran, Kans."

The defendants maintain that the reference to the mandate and opinion of this court, especially in view of its repetition, shows that the trial judge believed that obedience thereto compelled the finding made, irrespective of his own judgment in the matter. The language used suggests the possibility of such an understanding. It is not necessary to incur any risk that

the judgment finally established shall be affected by a mis-understanding by either the trial or appellate court of the language used by the other, inasmuch as any remote doubt on the subject can easily be set at rest, in accordance with a practice already adopted in a somewhat similar situation. (*Butler v. Milner,* 101 Kan. 264, 166 Pac. 478.) The purpose for which the former judgment in the present case was reversed, as stated in the order of reversal, was in order that the trial court might, from the evidence already adduced, make the additional findings of fact and conclusion of law requested by the plaintiffs, and for such further proceedings in accordance with the opinion as might be proper. What the plaintiffs had requested was that the findings should be made of the market price of the oil after May 2, 1913, and of the amount of their additional damages as measured thereby, and that the law should be applied to the facts so found. It was of course not the intention of this court to place any restraint upon the trial court in the exercise of its function of determining the credibility or weight of the evidence. It seems entirely clear that the trial judge could not have supposed that the mandate required him to find that the market price was 15 cents higher than the contract price, but there is a possibility that he may have interpreted it as imposing upon him the absolute duty of finding that it had some definite market value. As already indicated, we regarded and still regard the evidence already referred to, if accepted as true, as affording a basis for such a finding, but we had no thought of imposing its acceptance upon the trial court. The cause is to be remanded to be modified in relation to another matter to be hereinafter discussed. The further order will be made that, except for such modification, the judgment will stand as rendered, if the finding referred to is the result of an independent consideration of the evidence by the trial court. If, however, that judgment was arrived at only by accepting the evidence on the subject as true, and as necessarily establishing a market price of 73 cents, under a supposed compulsion resulting from the language in which the former decision of this court was expressed, then the trial court is directed first to pass independently upon the truth and effect thereof, and render such judgment as shall be in accordance with the conclusion reached in that regard. Of the fact in this respect the trial

court can of course be absolutely certain, from its own knowledge, while this court could only form a fallible judgment based upon the interpretation of language not entirely free from ambiguity.

3. The portion of the contract relating to the quantity of oil to be furnished read: "the seller agrees to sell to the purchaser from 4,000 to 6,000 barrels of fuel oil per month during the period of twenty-four months from October 1st, 1912; the understanding being that the purchaser shall take under this contract up to the maximum amount, if it is required." During the four months and thirteen days that the defendants complied with the contract they furnished the plaintiffs an average of 4,438 barrels of oil a month. In the first judgment, which covered damages up to the time of the bankruptcy of the customer with whom the plaintiffs had a contract for placing the oil, the amount was based upon a default in delivering that amount each month. In rendering the additional judgment the court adopted the same basis in this respect. The defendants maintain, and we think rightly, that their liability should be limited to the minimum amount of oil named in the contract. The amount of damages covered by the first judgment was arrived at in view of the special and exceptional circumstances of the case. According to the findings, after the plaintiffs had contracted for the placing of the oil at a net profit of 15 cents, the defendants cut off their supply and furnished the oil direct to their customer at the same advance. With respect to this transaction the plaintiffs' damages were measured by the specific amount they had lost by being deprived of the fruits of the favorable arrangement they had made for the disposition of the oil. In that situation there was a reason for considering the amount of oil actually furnished, which does not apply in estimating the plaintiffs' subsequent damages. As to these they are relegated to the ordinary rule that the measure of damages for the failure to deliver goods contracted for is the difference between the contract price and the market price. The amount of oil for the nondelivery of which we regard the defendants as liable under this rule is that shown on the face of the contract. The agreement being for the furnishing of from 4,000 to 6,000 barrels, and the buyer being expressly required to take the maximum if offered, the seller could in our judgment have satisfied his obligation by the delivery of the mini-

mum., The additional judgment will be modified by deducting therefrom the sum by which the amount of recovery was increased by reason of the calculation being based on 4,438 barrels instead of an even 4,000.

4. One of the plaintiffs testified that the purchasing agent of the city of Kansas City had quoted him $1.05 per barrel for a year's supply of fuel oil, which would have been equivalent to about 74 cents at Moran. In support of a motion for a new trial on the ground of newly discovered evidence the defendants introduced the affidavit of the purchasing agent to the effect that he had not made such an offer. The denial of the motion is assigned as error. In the phase of the case now under consideration the plaintiffs were entitled to recover upon showing the market price of the oil. It was not necessary that they should prove that they could have disposed of the oil to any particular customer. The evidence concerning the transaction with the Kansas City purchasing agent was not of vital importance, except as it might have discredited the witness who testified for the plaintiffs concerning it. We see no just ground for disturbing the ruling of the trial court in this regard.

The cause is remanded for a modification in regard to the amount of oil on which the recovery is to be based, the judgment to be otherwise affirmed or further modified according to the test already laid down to be applied by the district court.