## TROY LAUNDRY MACHINERY COMPANY v. DOLPH.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF NEW YORK.

No. 149. Argued January 13, 14, 1891. — Decided March 2, 1891.

Dolph contracted to sell to the plaintiff in error standard Dolph washers at $110 a machine, and the company contracted to take at least 50 machines a year at that price, the contract to last for five years. There was a further clause by which Dolph was to have the option of manufacturing for the company any other machines sold by him at such price as might be bid for them in open competition. The company at the expiration of a year threw up the contract and repudiated its obligations, and Dolph sued to enforce them. *Held*, that the principal object of the contract was the sale and purchase of the Dolph machines; that the sale and purchase of the other machines were subordinate to it; and that the court should have instructed the jury that, as to the latter, there could be none other than a recovery of nominal damages.

IN 1882 the parties hereto entered into the following contract:

"This agreement made this third day of January, 1882, between A. M. Dolph, of Cincinnati, O., of the first part, and the Troy Laundry Machinery Company, Limited, of Troy, N.Y., party of the second part, witnesseth:

"1st. That the said A. M. Dolph, party of the first part, in consideration of the covenants hereinafter named, made, and to be kept, shall furnish, crated or packed for shipment, delivered at depot in Cincinnati, O., to the order of said Troy Laundry Machine Company, Limited, and within a reasonable time after such order is received, certain washing machines of standard size of the style heretofore manufactured by the said A. M. Dolph as the hydraulic washer, and known and designated as the Standard Dolph washer, at the price of one hundred and ten dollars ($110) each, which shall be designated as the manufacturer's price for said Standard Dolph washer.

"2d. That the said Troy Laundry Machine —, Limited, party of the second part, in consideration of the covenants herein made and to be kept, agree to pay to the said A. M.

Dolph the sum of one hundred and ten dollars ($110.00) each for said Standard Dolph washer delivered as before mentioned, and to bind themselves herein and agree to take at least fifty (50) of said Standard Dolph washers each year.

"3d. That the said A. M. Dolph shall have the refusal or option of manufacturing any and all washing machines sold by the said A. M. Dolph and said Troy Laundry Machinery Company, Limited, or for them through their agents, at the price of one hundred and ten dollars ($110.00) each for the said Standard Dolph washer and at such price for other washing machines as may be bid for them in open competition for equal quality of goods by any responsible manufacturers other than said Dolph, and these prices shall constitute and be designated as the manufacturer's prices for these machines.

"4th. That the selling price of the said Standard Dolph washer is hereby fixed at two hundred dollars ($200.00) each, and that the selling price of washing machines that may be sold by either party hereunto other than the Standard Dolph washer shall be fixed at a price the same in proportion to the designated manufacturer's price thereof as the selling price of the Standard Dolph washer is to its manufacturer's price, provided that the selling price of any of the aforesaid washing machines may be changed by the mutual consent of the parties hereto.

"5th. That the said A. M. Dolph and the said Troy Laundry Machinery Company, Limited, do hereby agree together to equally divide between them, the said parties, the entire profits arising from the combined sales made by both parties or for them through their agents of any and all washing machines, and this profit shall be in all cases the entire margin between the designated manufacturer's price and the fixed selling price at the time the sale is made, provided that a discount or commission of twenty per cent of the selling price may be allowed by either party to their regular published agents other than a paid employé on sales actually made by said agent, which discount may be deducted from the profits before a division of the same is made.

"6th. Each party to this agreement shall furnish to the

other party annually a sworn statement of the number of each kind of washing machines sold by them; also the profits made above manufacturer's price on sales of washing machines other than the Standard Dolph washer, and the number of each kind of washing machine sold by their agents.

" 7th. That the party of the second part agrees to pay to the party of the first part for all the goods ordered and delivered according to articles one and two to this agreement, within four months after the delivery of said goods.

" 8th. That at the close of each year a division of profits shall be made according to articles five and six of this agreement, and any balance found to be due to either party shall be paid to that party within the first two months of the year following.

" 9th. That on all washing machines furnished to the said Troy Laundry Machinery Company, Limited, shall be fixed a plate inscribed with the name and place of business of the said company.

" 10th. This agreement shall be in force for the term of five years next ensuing.

" In witness whereof the parties hereunto have set their hand and seal the day and year first herein written.

" A. M. DOLPH.   [SEAL.]

" DELAVAN PECK, <i>Pres't.</i>

" CHARLES ANGUS, <i>Sec'y.</i>

" [Corporate Seal of the Company.] "

In February, 1884, Dolph, the defendant in error, commenced his action in the Circuit Court of the United States for the Northern District of New York, alleging breach of this contract by the defendant, now the plaintiff in error, and claiming damages in the sum of thirty thousand dollars. Trial being had, resulted in a verdict, March 26, 1886, in favor of plaintiff, for sixteen thousand dollars. That verdict having been set aside, (28 Fed. Rep. 553,) a new trial was had, which resulted in a verdict, March 26, 1887, in favor of plaintiff, for the sum of seven thousand two hundred and eight dollars. Judgment was entered on that verdict, of which the defendant

complains in this court, by proper proceedings in error, and asks a reversal.

*Mr. Esek Cowen* for plaintiff in error.

*Mr. H. P. Lloyd* for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

The defendant kept this contract for a year and then repudiated its obligations. The excuse made in its correspondence and alleged in its answer was, that the parol agreement between the parties, an agreement authorized by the directors of the defendant company, was a three years' contract; that the contract prepared by plaintiff was for five years; and that through inadvertence and mistake the contract thus prepared was signed by the officers of the defendant company. A change in the written agreement from five years to three was demanded and refused. As no testimony was offered to support this contention, it must, for the purposes of this suit, be taken as a mere pretence. The defendant, having made a five years' contract, at the end of one year repudiated it. The contract was not against public policy; simply a contract between a manufacturer and a dealer, with reference to the manufacture and sale of washing machines. Many errors are alleged in the trial of the case. We notice but one, for we are constrained to hold that the court erred in its ruling in that respect.

It will be observed that the contract had two phases. One for the manufacture and sale of the Dolph washer; the other, in paragraph three, in reference to the manufacture and sale of other washing machines. In reference to that, the contract provided that Dolph should have the option to manufacture for defendant any other machines, at such price "as may be bid for them in open competition, for equal quality of goods, by any responsible manufacturers other than said Dolph." In reference to this branch of the case the learned judge, charging the jury, said: "Regarding the machines other than the Dolph machines, it is wellnigh impossible to lay down any satisfactory

rule of damages. In attempting to do so difficulties and perplexities are encountered at every turn. At first I was inclined to withdraw this branch of the subject from your consideration entirely, for the reason that the evidence was so uncertain that no damage could properly and certainly be based upon the breach of the contract in this regard; but subsequent reflection has induced me to submit the facts for your consideration, with such instructions as will induce you, if you award anything, to give only such actual damages as you believe the plaintiff has suffered." And further on, quoting also from the opinion given on the motion for a new trial: "No option was given him the first year, and, as there is no way of ascertaining whether, if the option had been given thereafter, it would have been accepted, it is by no means easy to state what his rights in this respect are. The decision of the court before referred to says upon this branch of the case: 'As to the damages recoverable for the breach of that provision of the contract by which the plaintiff was to have the privilege of supplying the defendant with other washing machines at the lowest price bid by other manufacturers for supplying defendant with the same, it is not clear that the plaintiff could establish any loss of profits, unless it could be shown that there is some usual or average percentage of profit customarily realized by manufacturers of analogous articles, or some established manufacturer's price. The plaintiff might have been unwilling to act upon the option at prices which other manufacturers would have offered, and the extent of his prospective loss, if any, is largely a matter of speculation. The defendant may have been so situated that it could better afford to employ its own men and facilities, even although by doing so its machines would cost it more than to buy them of others, and in this view the difference between the actual cost of the machines to the defendant and the sum it would have cost the plaintiff to make and furnish them might not be the correct rule of damages.'" Obviously he appreciated the difficulty, but felt that the misconduct of defendant compelled an open door to some substantial recovery, even in respect to this branch of the contract.

No option was given to plaintiff, and none claimed by him; nor was there anything that could be fairly called open competition. True, the defendant made a contract with a neighbor to manufacture these machines. After awhile it abandoned that contract, and manufactured them itself. The plaintiff never exercised or sought the option conferred by this clause of the contract. The circumstances under which the contract was made with the neighboring manufacturer are not disclosed. It does not appear that his offer was made in thought of any competition. If the idea of open competition, as named in the contract, had been presented, who can say that he might not have been willing to have contracted for the machines at a less figure, and how can it be said, with this uncertainty, that the plaintiff would have exercised his option? The opinion of the Circuit Judge in sustaining the motion for a new trial, evidently was, that in the uncertainty surrounding the facts, recourse might be had to some usual or average percentage of profits customarily realized by manufacturers of analogous articles. His idea seemed to be, that when contract provisions fail, supposed equivalents may be resorted to. Possibly in some cases such ruling as that may be adopted; but we think it inapplicable here. Specific provisions as to the Dolph machines, which was obviously the real subject matter of the contract, were inserted, and the defendant agreed to take at least fifty of them each year. Other machines were subordinate, and the stipulations in respect to them were incidental rather than principal, and apparently more for supporting and giving force to the principal matter of the contract, the Dolph machines; hence, whatever of uncertainty attends those provisions. On breach of such a contract, the principal matter in respect to which provision was made is the one to be mainly regarded. If subordinate provisions are clear and definite, and damages for disregard thereof determinable by plain and obvious rules, of course such damages may be recovered; but if because they are subordinate the provisions in respect thereto are indefinite, then the court may not, with the idea of preventing injustice, attempt to substitute equivalents therefor. The main purpose of the contract must be

regarded, and its specific provisions in connection therewith enforced, and proper damages given for the breach thereof. A lack of certainty as to terms of contract obligations of either party, or measure of damages for breach, is simply the misfortune of him who seeks to recover in case of a breach thereof. The case practically is one of those in which, however reprehensible the conduct of the defendant may be in repudiating its contract obligations, the parties, having reference to one portion of the subject matter of the contract, made certain stipulations which determine the measure of damages in the case of breach; and on the breach the injured party has failed to bring himself within those stipulations. Such failure is his loss. The court should have charged the jury, that in reference to the machines other than the Dolph machines, there could be none other than a recovery of nominal damages. *Jackson* v. *Allen*, 120 Mass. 64, 80.

For this error the judgment is

*Reversed, and the case remanded, with instructions to grant a new trial.*