## TEXAS CO. v. PENSACOLA MARITIME CORPORATION.

(Circuit Court of Appeals, Fifth Circuit. July 11, 1923.)

### No. 4001.

1. **Appeal and error ⬅1097(1)—Former decision is generally the law of the case.**

   While the Circuit Court of Appeals has power under special circumstances to re-examine questions decided on previous hearing of same case, decision on former appeal or writ of error is, as a general rule, the law of the case.

2. **Sales ⬅416(1)—Evidence as to demand for bunker oil subsequent to breach not admissible to show buyer could have resold.**

   In buyer's action for seller's breach of contract to furnish all oil which buyer might resell for delivery to vessels at particular port, evidence as to demand for bunker oil at such port at time of, and subsequent to, the breach was admissible only to show condition of market and likelihood that plaintiff's future business would not have been less in amount than, what it had previously reached, and not to show that, if plaintiff had had the oil, it could or would have resold it.

3. **Sales ⬅416(1)—Matters to be considered on question whether buyer could have resold specified.**

   In buyer's action for seller's breach of contract to sell it all the bunker oil that it might resell for delivery to vessels at particular port, the fact that the buyer could or would have resold the oil, if it had had it, could only be properly deduced from evidence of volume of its business existing at time of the breach, or from proof of contracts then in existence, or subsequently offered and declined because of inability to procure oil.

4. **Sales ⬅68—Under contract for sale of oil resold by buyer for delivery to vessels buyer authorized to resell to dealers.**

   Under contract for sale of all bunker oil which buyer might resell for delivery to vessels at particular port, buyer was authorized to sell to dealers purchasing for resale, if the oil was to be delivered to vessels at such port.

5. **Sales ⬅415—Absolute certainty of damage from seller's breach held not required.**

   In action for breach of contract for sale of all bunker oil which buyer might resell for delivery to vessels, it was not necessary to prove absolute certainty of damage, consisting of loss of profits, but only reasonable probability of damage and of its amount.

6. **Sales ⬅418(12)—Buyer's future business not estimated by prorating what it had done shortly before breach for entire time contract in force.**

   Where defendant, agreeing to sell to plaintiff all bunker oil which plaintiff might resell for delivery to vessels during specified period, broke contract on May 3d, and plaintiff had made sales during April, and made contracts to be filled in May, but prior to those months the market had been dull, and it had been engaged in establishing its business, it would not be unreasonable to estimate the future business it would have done on the basis of that done after April 1st, instead of prorating such business over the entire period during which the contract had been in force.

7. **Sales ⬅418(12)—Additional expenses to be deducted in estimating lost profits, and proof thereof should be made.**

   Profits lost by buyer from seller's breach of contract should be diminished by additional expenses which would have been incurred in making them, and proof thereof should have been made.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. **Sales ⊜418(12)—Seller liable for expenses of third persons to whom buyer became liable because of seller's breach.**

Where, because of seller's failure to furnish oil, buyer was unable to furnish oil to vessels, and became liable to them for expenses thereby caused them, the seller was liable to the buyer for its loss therefrom.

9. **Sales ⊜416(2)—Charter parties admissible on question of value of ship's time lost through seller's breach.**

Where by reason of seller's breach of contract buyer was unable to supply oil to vessels, as it had contracted and became liable to them, charter parties covering such vessels were competent evidence on question of value of time lost by them, where jury were told that they were not conclusive.

10. **Trial ⊜260(1)—Refusal of charges covered by those given not error.**

The refusal of requested charges, which, so far as they were correct, were fully covered by the instructions given, was not error.

11. **Sales ⊜418(12)—Buyer entitled to recover for loss of profits on contracts made or which could have been made.**

Where seller broke contract for sale to buyer of all bunker oil which buyer might resell during certain period, the buyer might recover the loss of profits sustained on contracts which it made, or which it could have made, for delivery of oil, if contract had not been broken, during the remaining period thereof, if satisfactorily proved.

12. **Sales ⊜416(2)—When market value may be considered as showing prices at which sales could have been made, if seller had performed.**

In absence of proof indicating different prices, proof of market value of oil for delivery at particular port to vessels for fuel might be considered, in connection with other proof, as indicating at what prices sales might have been made by buyer, if seller had not broken contract to furnish all oil resold by buyer to vessels at such port.

Bryan, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Northern District of Florida; Wm. B. Sheppard, Judge.

Suit by the Pensacola Maritime Corporation against the Texas Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

The witness MacDonnell mentioned in the opinion bought oil from plaintiff for resale to vessels. Defendant moved to exclude his testimony on the ground that as to his dealings with plaintiff he was a dealer in oil, and not an owner or operator of ships coming to the port of Pensacola for bunker oil.

Harry T. Klein, of New York City, E. C. Maxwell, of Pensacola, Fla., and Palmer Pillans, of Mobile, Ala., for plaintiff in error.

Francis B. Carter, of Pensacola, Fla. (Carter & Yonge, of Pensacola, Fla., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This is the second appearance of this case in this court. The opinion on the former hearing is reported in 279 Fed. 19. Briefly stated, the case is as follows:

On July 22, 1919, the Texas Company entered into a written contract with the Pensacola Maritime Corporation, by which it agreed to

sell to said corporation from August 1, 1919, to September 30, 1920, and said corporation agreed to buy from it, all the bunker oil sold by said corporation for delivery to vessels in the port of Pensacola. The seller was not obligated to deliver more than 20,000 barrels in any calendar month, except that the purchaser, by giving to the seller 10 days' written notice, might require a total delivery of 35,000 barrels per month, or by giving 30 days' written notice, might require the seller to furnish 50,000 barrels per month. On May 3, 1920, the Texas Company notified said corporation that it canceled said contract, and it refused to thereafter furnish to said corporation any more oil. Said corporation notified the Texas Company on May 4, 1920, that it would take the additional 30,000 barrels of oil, to wit, 35,000 barrels 10 days from the date of said notice, and 50,000 barrels 30 days from such date. This suit was brought to recover damages for the alleged breach of said contract, averring that said corporation would have sold all of the oil required to be furnished by said contract at a greatly increased price to that at which the Texas Company had agreed to furnish the same.

The Texas Company defended on the grounds: (1) That the contract was unilateral, and not binding; (2) that the oil business of the plaintiff was a new business; that no sales were made under said contract for 7 months after July, 1919, and therefore no basis existed for the recovery of prospective profits; (3) that the contract required payment to be made promptly on completion of each delivery of oil, and allowed a cancellation for failure to pay any amount when due, and provided that no forbearance, or course of dealing, should affect this right of the defendant; that prior to May 3d, when it gave said notice of cancellation, plaintiff had failed to pay, when due, an amount owed for oil previously ordered and delivered. To this last plea the plaintiff interposed two replications; one denying its truth, and the other alleging that before any notice of cancellation was given plaintiff had paid for all oil delivered, that defendant had never given any notice of insistence on payment at the time provided in said contract, or that it would terminate the contract as to future deliveries for failure to make payment promptly when due. No proof of the truth of said plea was offered under the replication denying the same, and on the trial it was stipulated that the facts stated in the second replication were true.

The decision rendered in this court on the former writ of error held that the contract was not unilateral, and was a binding agreement; that the plaintiff might recover for profits lost on sales of oil for delivery to ships at Pensacola, actually made, or on those which it proved it could have made, which profits were lost by reason of the breach of said contract by the defendant; and that the second replication to the plea of a failure to make prompt payment was sufficient. The case was reversed because of a failure of proof to show any loss of profits, and for error in the trial court in holding the proof then adduced sufficient, and that it showed a definite amount of lost profits. The plaintiff in error seeks to reopen the decision then made, upholding the validity of such contract and the sufficiency of said replication.

For a further statement of the facts, reference may be had to the former opinion in this case.

[1] 1. While this court may have the power, under special circumstances, to re-examine questions decided on a previous hearing of the same case (Messinger v. Anderson, 225 U. S. 436, 444, 32 Sup. Ct. 739, 56 L. Ed. 1152), as a general rule the decision on a first appeal, or writ of error, is thereafter the law of the case (Richardson v. Ainsa, 218 U. S. 289, 295, 31 Sup. Ct. 23, 54 L. Ed. 1044). We do not think that the rulings made on the former hearing should now be disturbed.

It may be added that, as to the cancellation of the contract for alleged failure to promptly pay for oil furnished during April, 1920, the former opinion called attention to the fact that two replications were filed to the plea alleging a failure to make prompt payment for oil furnished, one of which denied the truth of the plea, and that no proof in support of such plea was offered; the truth of the second replication being admitted. This is still the condition of the proof on the present record. Furthermore, the testimony in this record shows that on the day the notice of cancellation was delivered the Munsomo had been placed about 10 o'clock a. m. at the Texas Company's dock to receive oil; that the agent of said company promised to deliver the oil to said vessel, it being stated that the Texas Company's pump had broken down and would be started about 2 o'clock. At that hour the pump was reported to plaintiff by defendant's agent as still being broken, but that the Texas Company would start pumping oil into the Munsomo at 4 o'clock. At that hour it was stated the pumping would begin in a few minutes. Not until 5 p. m. was the letter attempting cancellation delivered. There is no suggestion that any sum during this entire period was due from, or unpaid by, plaintiff, or that any complaint had been made that the payments for oil previously furnished had not been satisfactorily made. Texas Co. v. Pensacola Maritime Corporation (C. C. A.) 279 Fed. 19.

[2, 3] 2. At the request of plaintiff the court charged the jury as follows:

"The plaintiff is only required to prove its case, including its damages, by a preponderance of the evidence. The jury is not authorized to base its verdict on mere speculation or possibilities, but absolute certainties are not required; (that is, you are not required to be absolutely certain that plaintiff would have sold any particular quantity, or the whole amount, but if you can reasonably deduce, from the circumstances at the time and the condition of the market and the price of the oil that the Maritime Corporation could have delivered at, and it is a reasonable deduction and a strong probability that the Maritime Corporation could have sold it, then it would not require absolute certainty that it would sell it to make a case for the jury). If the evidence in the case is sufficient to convince the jury that plaintiff could have, during the unexpired period of the contract, sold the quantities of oil which it had a right to demand under the terms of the contract, or some definite portion thereof, and for the purposes stated in the contract, and the jury are convinced by the evidence that such sales could have been made at definite prices, then the plaintiff will be entitled to recover the profits, if any, it would have made from such sales."

The portion of said charge in parenthesis was interpolated by the court. Under the above charge the jury was instructed that, if it

could reasonably deduce from the circumstances at the time, and the condition of the market, and the price at which the Maritime Corporation could have delivered oil, and if it was a reasonable deduction and a strong probability that the Maritime Corporation could have sold it, then it would not require absolute certainty in order to make out the plaintiff's case.

Under this instruction the jury was permitted to find from the evidence of the general condition of the bunker oil business at Pensacola, and of the market prices shown then to exist, which were greatly in excess of the price of oil at which the Texas Company had agreed to deliver to the Pensacola Maritime Corporation, and from the general statements of parties that they would have taken this oil from. plaintiff, that the plaintiff could have sold the entire quantity of oil which it could demand from defendant on said contract. While there were other charges delivered by the court to the jury, which, if standing alone, might have confined the use of this testimony within proper limits, they were necessarily inconsistent with the above charge, and under the facts of this case the above charge was error, harmful to the defendant.

We think that the testimony in this case as to the demand for bunker oil at Pensacola on May 3d, and thereafter was admissible only for the purpose of showing the condition of the market for such oil and the likelihood that plaintiff's business during the remainder of the term of its contract would not have been less in amount than what it had previously reached. Eexcept for this purpose, such testimony was not admissible. It was not evidence from which the jury could properly conclude that, if the plaintiff had had the oil in question, it could or would have sold it. This could only be properly deduced from evidence of the volume of plaintiff's business, existing at the time of the breach of the contract, or from proof of contracts in existence at the time of such breach, or offered to plaintiff subsequent thereto, and declined because of its inability to procure oil.

Giving to the testimony full weight for all admissible purposes, it does not show that the plaintiff had received, or would have received, the firm offers of sufficient contracts for the purchase of oil, for delivery to vessels at Pensacola, necessary to support the verdict found in this case. It may be that there was proof of a sufficient offer from MacDonnell for 12,000 barrels. Knowles' testimony may have warranted, but did not require, the finding that the Munsomo would have taken 40,000 additional barrels. The negotiation between Phillips and the Shipping Board does not appear to have ripened into even a conditional agreement. No definite understanding seems to have been reached with Turner.

[4] 3. We think that the contract with the Texas Company authorized a sale of oil to MacDonnell and persons similarly situated, where the oil was to be delivered to vessels at the Texas Company's dock in Pensacola for their use as fuel, that the objections to the testimony of such offers were properly overruled, and the charges requested on the subject of such proposed sales were properly refused.

[5] 4. The defendant contends that the proof showed no basis for

any recovery, except for the oil contracted to be furnished to two steamers, the Munsomo and the Ohioan, and that a recovery based on the prospect of future business during the remaining months of the contract is too speculative to be allowed. This was not the case of a business yet to be established. It had been conducting active solicitation for orders since August 1, 1919. It had made sales during April 1920. It had made contracts to be filled in May. It therefore had the basis of business conducted and of actual sales made and contracted for before breach as an evidence of its probable future business, with the evidence adduced at the trial showing the acute demand for bunker oil at Pensacola during the entire remaining period of the contract. It is not absolute certainty of damage that is required to be proven, but only a reasonable probability of damage and of its amount. The rule is well stated as follows:

"An attempt is sometimes made to distinguish between certainty that some damage has been caused, and certainty as to the amount of damage; but no broad statement can be made that where it is uncertain that any damage has been caused by the breach no recovery is allowable. In almost every case where prospective profits are allowed, it will be true that the profit was a chance—dependent upon the ability to make a large number of contracts with other persons on advantageous terms. All reasonable expectations might have been disappointed by the happening of divers contingencies. But if the plaintiff has given valuable consideration for the promise of a performance which would have given him a chance to make a profit, the defendant should not be allowed to deprive him of that performance without compensation unless the difficulty of determining its value is extreme. In a recent English case the plaintiff by contract was entitled to become one of 50 persons, 12 of whom were to be selected by judges for the bestowal of prizes. The plaintiff was not notified of the time when the decision and award was to be made, and therefore failed to present herself, and 12 other persons were awarded the prizes. A recovery of substantial damages was upheld. It was recognized that the plaintiff would have had. if the defendant had not committed a breach, about one chance in four of securing a prize. The court declined to take a distinction between a chance and a probability so far as the right to recovery was concerned. As was said in a Minnesota decision: 'It is no exoneration to defendant that his misconduct, which has made inquiry as to the quantum of harm necessary, renders that inquiry difficult. The best the law can do is to award approximate compensation. Its failure to do even and exact justice in such case is not more conspicuous than in many others. No other remedy is available. To allow only for loss of time and expenses would put a premium upon breaking contracts and deny substantial justice.' Though the fact that the plaintiff's damage is uncertain in amount, or even that it is uncertain that substantial damage has been caused, should not deprive the plaintiff of a right to compensation for the loss of the defendant's performance which would have given the plaintiff a chance to make profit or avoid damage, such uncertainty is a good reason for applying some other test, if another test is possible, for estimating his damage, than by letting a jury guess at the value of the plaintiff's chance or probability by seeking to estimate his probable profits and losses. For this reason where the performance of which the plaintiff has been deprived has a market value, courts will be more reluctant to allow the test of prospective profits than in a case where, if prospective profits are not allowed, the plaintiff will be denied relief altogether. Thus, where the defendant has wrongfully broken a contract to furnish power to run a mill, some courts restrict the damages to a difference between the rental value of the mill, if the contract had been kept, and its rental value in view of the breach. Other courts allow loss of profits to be estimated by the jury. But courts which would deny the plaintiff in such a case the right to recover anticipated profits would doubtless allow

proof of such profits in a case where no other method of estimating the plaintiff's damage was possible, and where, therefore, a rejection of the test of anticipated profits would result in denying the plaintiff all substantial relief. Where a breach of contract involves deprivation of a chance which has value in a business sense, a just reluctance will be felt by most courts to deny altogether the recovery of substantial damages." Williston on Contracts, § 1346.

The following case is not unlike the present in principle. There the plaintiff had been given an agency to sell a given quantity of fruit jars. After the contract was in operation, it was repudiated. It was held that affirmative proof that the plaintiff could have sold all of the jars agreed to be furnished was not required, where the evidence was sufficient to reasonably tend to show that they would have been sold. On the question of the certainty of proof required it is held:

"Nor was the proof of probable sales open to the criticism of uncertainty and speculation in the legal sense. The evidence tended to show that the Owens jar was received with great favor by the trade; that the prospects of large sales during the season were good. Before the contract was terminated plaintiff had actually sold 32 cars. One of plaintiff's customers afterwards asked for 2 extra cars. Twelve cars were sold by Ball to jobbers in Toledo after the purchase of defendant's plant. There was evidence tending to show the likelihood of making sales to other named customers. The jury was instructed, in substance, that it was not limited, in its consideration to sales which would probably be made by defendant, to the consuming capacity of the several firms which had already been interviewed by the plaintiff. This instruction is criticized by defendant, who insists that, if plaintiff had sold every customer it approached to the extent of the latter's full capacity to handle fruit jars, the sales would have aggregated only 158 cars, the commissions and premiums on which would have amounted to but $4,266. We think, however, in view of the nature of the evidence already referred to, defendant's contention is not well founded, and that the trial court took the correct view of the subject. As said by Judge Grover (quoted in Wakeman v. Manufacturing Co., 101 N. Y. at page 212, 4 N. E. 268, 54 Am. Rep. 676), with respect to the uncertainty of profits: 'It is not an uncertainty as to the value of the benefit or gain to be derived from performance, but an uncertainty or contingency whether such gain or benefit would be derived at all. * * * It is sometimes said that speculative damages cannot be recovered because the amount is uncertain; but such remarks will generally be found applicable to such damages as it is uncertain whether sustained at all from the breach.' The evidence as to the probable amount of sales was thus not speculative. The other elements entering into the loss of profits were commissions, premiums, and expenses of sales." Hollweg v. Schaefer Brokerage Co., 197 Fed. 689, 702, 117 C. C. A. 83, 96.

The proof here fairly showed that, if this contract had not been breached, the plaintiff would have sold at least 20,000 barrels of oil to the Munsomo, the Ohioan, and the Wisconsin in May, and under the evidence as to the demand for bunker oil at Pensacola from May 1 to October 1, 1920, the jury might have found that plaintiff would have sold an equal amount monthly during the remaining term of its contract.

[6] 5. The charges requested by defendant, to the effect that, if plaintiff was entitled to recover on the basis of its existing business, such business done in April, or in April and May, prior to the attempted cancellation of the contract, should be prorated over the entire time during which the contract had been in existence, were properly refused. The proof shows that during the months preceding March,

1920, the demand for bunker oil was dull. During these earlier months the plaintiff was engaged in establishing its business. Its active business in bunker oil began about April 1st. The proof was that thereafter the demand for bunker oil was great and the price advancing. It is not unreasonable to conclude that the business of April and the actual requirements for May were not less than a fair test of the business plaintiff would have done in succeeding months, if it had been furnished with oil by the defendant as provided in the contract, and not that its business in succeeding months should be judged of on the basis of prorating the business done after April 1st over the entire period from August 1, 1919, when the contract came into operation.

[7] 6. Of course, the profits, if any, found should be diminished by the expenses necessary to make the same. No proof was offered by the plaintiff as to the expenses, if any, which it would have incurred in making the prospective profits, additional to those which it did incur in carrying on its business. It should have offered proof as to the expenses not incurred, which would have been, had the sales been made.

[8] 7. It would also seem that a liability for which the plaintiff is responsible has been asserted against it for expenses caused to the Munsomo and Ohioan for failure to furnish them with oil according to agreement. The proof indicates that a demand for such expenses has been made by persons in such relation to the owners and charterers that it is equivalent to a demand by the one entitled to make it. If the plaintiff is liable to vessels for expenses caused to them, by reason of its failure to deliver oil at Pensacola, such failure resulting from the refusal of the Texas Company to furnish oil contracted to be delivered, and the inability of the plaintiff to procure it elsewhere, the Texas Company would be liable to the plaintiff for the loss thus occasioned to it.

[9] 8. On the question of damages for delay to these vessels the charter parties of the Monsomo and Ohioan were introduced in evidence. Objection was made to the admission of these charter parties, so far as they were offered as evidence of their daily hire value, sought to be recovered, during the time they were delayed by reason of the plaintiff's failure to furnish them with bunker oil; such failure being caused by the Texas Company's breach of its contract to furnish oil to the plaintiff. This objection was overruled and the charter parties admitted. The defendant also requested the court to charge the jury that they could not look to the charter party of the Ohioan as a source of information touching the daily value of the ship's lost time, which requested charge was refused.

We do not think the court committed error in admitting these charter parties as evidence bearing on the question of the value of the ships' time during the periods they were delayed. The court properly instructed the jury that they were admitted to assist them in ascertaining the facts as to such value, but that the charter hire alone was not the absolute test; the real value being such sum as the charterer would have made by the use of the vessel during such time had he not been prevented from using her. Charter parties are competent evidence for

the purpose above stated.   Spencer on Marine Collisions, § 204; The Conqueror, 166 U. S. 125, 133, 17 Sup. Ct. 510, 41 L. Ed. 937.

[10] 9. So far as they were correct, the charges requested were fully covered by the instructions given to the jury.   The brief of counsel for plaintiff in error seeks a review of the several questions therein set out, grouped under five heads, and the argument was restricted to these subjects.   The foregoing opinion deals with each of the subjects presented by said brief or argument.

[11, 12] 10. As held in the former opinion in this case, the plaintiff, if entitled to recover, may recover the loss of profits which it has sustained on contracts which it made, or which it shows by proof it could have made, had the contract not been broken by the defendant, to furnish oil for delivery to vessels at Pensacola during the remaining period thereof.   In estimating this profit, the jury may consider the sales made by the plaintiff under the contract, and any proof offered of firm contracts actually offered to plaintiff for delivery to vessels at Pensacola of definite quantities of oil at fixed prices during the remaining period of said contract.   If the proof does not satisfactorily show such offers, the jury may consider the proof of sales actually made, and the proof whether or not such scale of sales would reasonably have continued to have been made during the remaining period of such contract.   If the proof indicates the prices at which such sales would probably have been made, such prices should be regarded.   In the absence of any proof indicating different prices, proof of the market value of oil for delivery at Pensacola to vessels for fuel during the period may be considered by the jury in connection with all the proof in the case, as indicating at what prices such sales, if any, might have been made.   From these profits, if any, should be deducted any additional expenses to be incurred in making the same as a basis for estimating such probable profits.   Unless the proof satisfactorily shows such prospective profits, the same should not be included in any verdict rendered; but, if it does show to the satisfaction of the jury that an amount would have been realized as such profits, such amount may be included in said verdict.

For the error in the charge, in not restricting the probative value of the testimony of general market conditions of the bunker oil business at Pensacola, the judgment of the District Court is reversed, and the case remanded, with direction to award a new trial.

BRYAN, Circuit Judge (dissenting in part).   I concur in the majority opinion prepared by Judge KING, except upon the question of the measure of damages for future profits.   The first trial of this case resulted in a verdict, rendered in accordance with the charge of the District Court, for an amount which represented the difference between the contract price and the market price.   On writ of error this court held that the contract bound the defendant to furnish only such quantities of oil as the plaintiff should sell as fuel for delivery to ships in the port of Pensacola, and—

"that the number of barrels of oil to be computed was such as the plaintiff had sold or procured contracts for the sale of, to vessels in the port of

Pensacola, and such other oil as from the evidence it appeared that plaintiff could have sold during the remaining months of the contract had its performance not been terminated."

The evidence in support of the amount of damages awarded by the judgment on the second trial is substantially as follows: During the early months of 1920 the demand for fuel oil greatly exceeded the supply. Vessels which required oil for fuel experienced much difficulty and delay in obtaining it. In several instances they went from port to port in an effort to be supplied. There was a falling off in production, and an approach of salt water, which indicates that oil is about to become exhausted, in many wells in both the Mexican and domestic oil fields. On account of this scarcity, and the excess of demand over supply, the price of oil rapidly advanced. From December 6, 1919, to February 1, 1920, the advance in the market price was from $1.37 to $1.89; from February 1 to February 7, the market price was $2.10; from March 1 to March 5, $2.467; from March 5 to March 13, $2.-887; from March 13 to July 5, $3.30¾; from July 5 to November 3, $3.51¾. On May 3, 1920, the defendant repudiated its contract with the plaintiff, and it was necessary for two ships then awaiting fuel oil under contract with the plaintiff to proceed elsewhere to get it. During the remaining months covered by the contract, the demand for fuel for oil-burning ships was so great as reasonably to support the conclusion that the plaintiff would have had opportunities to sell at Pensacola all the oil which it was entitled to receive from the defendant at prices more than sufficient to sustain the judgment which was recovered; but no one, including the defendant, which had the only dock for the delivery of oil at Pensacola, undertook to supply this demand. Some of the ships in port procured only enough oil to enable them to proceed to other ports in further search of a necessary supply.

The J. H. W. Steele Company was operating 27 or 28 oil-burning ships, some of which were delayed from 10 to 20 days on account of lack of fuel, and its general manager testified that this company alone could have taken the entire supply to which the plaintiff was entitled. John A. Merritt & Co. operated five oil-burning ships out of Pensacola, each of which left that port at least once after the defendant repudiated its contract, and were agents for other oil-burning ships which came into Pensacola and would have bunkered there during the remaining months of the contract period. These ships would have taken 80,000 barrels of oil. The Pensacola Shipping Company was another agent at Pensacola representing oil-burning ships. It made application to the plaintiff for 20,000 barrels, and did not make other offers of purchase only for the reason that it had been informed that the plaintiff was unable to procure the oil. Zimmern & Co., of Mobile, made a definite offer for 10,000 barrels. The plaintiff was under contract to furnish 40,000 barrels to the steamship Munsomo.

After defendant's repudiation of the contract, the plaintiff made an effort to procure oil for shipment in tank cars to Pensacola, and based upon the success of that effort, received offers from the agent of the Shipping Board for 50,000 to 60,000 barrels, and from John A. Merritt

& Co. for 100,000 barrels. But the plaintiff was unable to buy at prices to enable it to make resales at a profit.

In Howard v. Stillwell & Bierce Manufacturing Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, 503 (35 L. Ed. 147), it is said:

"The profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objections of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

The damages are not remote. Anticipated profits constituted the sole inducement to the plaintiff, and were within the contemplation of both parties. Masterton v. Mayor of Brooklyn, 7 Hill (N. Y.) 61, 42 Am. Dec. 38; 1 Sutherland on Damages, § 64. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate. The defendant, whose wrongful act creates the difficulty, is not entitled to complain that the amount of the damages cannot be accurately fixed. Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814; Hetzel v. B. & O. R. R. Co., 169 U. S. 29, 18 Sup. Ct. 255, 42 L. Ed. 648; Pierce v. Tenn. Coal, Iron & R. R. Co., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; 3 Williston on Contracts, §§ 1345, 1346.

Counsel for defendant thus frankly state the question here involved:

"As the plaintiff was not able to get oil elsewhere, its prospective oil business ceased; so the question before us is baldly and squarely: "What damages can be recovered for the loss of hoped-for profits from a business which is prevented or terminated by the wrongful act of the defendant?"

The defendant contends that the plaintiff cannot recover at all, unless it had an established business, and even then that it cannot recover more than the average amount of profits which had theretofore been realized during a like period. These propositions were advanced and rejected by this court on the first writ of error. 279 Fed. 19, 29, 30. Evidence of profits shown by past experience is an element to be considered in determining future profits. Where the only other evidence is purely speculative, it is entirely proper, and indeed necessary, to resort to past experience as the sole basis of recovery. Troy Laundry Machinery Co. v. Dolph, 138 U. S. 617, 11 Sup. Ct. 412, 34 L. Ed. 1083, Hodges v. Fries, 34 Fla. 63, 15 South. 682, Central Coal & Coke Co. v. Hartman, 111 Fed. 96, 49 C. C. A. 244, and Winston Cigarette Machine Co. v. Wells-Whitehead Tobacco Co., 141 N. C. 284, 53 S. E. 885, 8 L. R. A. (N. S.) 255, relied on by the defendant, are cases in which no reliable evidence whatever was furnished for the computation of lost profits.

But past experience should not, as it appears to me, be adopted as the sole test of plaintiff's loss of profits under the facts of this case. There was no other dock in Pensacola than the defendant's from which oil could have been delivered to ships. The market price of oil was

so high that it could not be purchased and delivered from tank cars at a profit. There were ships enough in port or nearby in search of necessary fuel oil to have used the entire supply to which the plaintiff was entitled. It is a reasonable inference that the agents of these ships would have bought from the plaintiff, if the latter could have supplied their requirements. There were some definite offers, and binding contracts would have resulted from their acceptance. But it quickly became known to agents for ships at Pensacola and elsewhere that the defendant had repudiated its contract, and that consequently the plaintiff had no oil to sell. These agents did not thereafter submit additional offers to the plaintiff. In the nature of things they could not then have made bona fide offers. To require firm offers from them is to require the impossible, and thus to limit the plaintiff's proof to offers from prospective purchasers who had no knowledge of defendant's wrongful act, and to general market conditions.

The contract period had expired when this case was tried. The jury were able to assess the damages in the light of knowledge as to scarcity, demand and supply in the past, and were not required to speculate as to future market conditions. They were justified in reaching the conclusion that in the sale of oil the plaintiff would have had little, if any, competition. The plaintiff was entitled to the profits it would have made if the contract had been performed, and to show, if it could, that it would have made greater profits than it had been making, just as the defendant would have been entitled to show, if it could, that the profits in the future would not have been as great as they had been in the past. The rule that future profits are limited by past profits should not be extended beyond the reason which gave rise to it, so as to prevent recovery of a greater amount which the evidence reasonably shows has been sustained. The application of that rule in this case would enable the defendant to repudiate its contract and to keep a large part of the profits to which the plaintiff was lawfully entitled. I do not know of any authority binding upon this court which compels such a result.

The majority opinion likewise rejects the rule, contended for by the defendant, that future profits are measured by past profits, and allows future profits greater than past profits upon the volume of business shown by past experience. But upon what kind of evidence? Upon evidence showing better market conditions, if necessary. This is properly done in an effort to award approximately the damages sustained. The same kind of evidence under like circumstances is admissible, it seems to me, also to show an increase in the volume of business. Necessary expenses should be deducted from the profits, as a matter of course. However, it does not appear that the plaintiff would have incurred any additional expense, and the evidence would have supported a judgment for a larger amount.

The conclusion I reach is that the evidence is sufficient to sustain the judgment, and I think this conclusion is sustained by the following authorities: Anvil Mining Co. v. Humble, supra; Shields v. Norton, 143 Fed. 802, 74 C. C. A. 254; Northwest Auto Co. v. Harmon, 250 Fed. 832, 163 C. C. A. 146, Ann. Cas. 1918E, 461; Randall v. Peer-

less Motor Co., 212 Mass. 352, 99 N. E. 221; Bagby v. Straub, 101 Kan. 608, 168 Pac. 1098. See, also, 3 Williston on Contracts, §§ 1346, 1347, and 1 Sutherland on Damages, § 121.