## TEXAS CO. v. PENSACOLA MARITIME CORPORATION.

(Circuit Court of Appeals, Fifth Circuit. June 24, 1924.)

No. 4299.

1. **Trial ⚌210(3)—Evidence affecting credibility of witness does not authorize withdrawal of his testimony from jury.**

That the testimony of a witness is materially different from that given by him on a former trial of the case does not authorize the court to instruct the jury in effect that they can base no finding on his testimony, the credibility of which is primarily a question for their determination.

2. **Appeal and error ⚌1067—Admission of incompetent evidence of damages held reversible error.**

Refusal of an instruction excluding from consideration by the jury of incompetent testimony tending to enhance the damages recoverable by plaintiff is reversible error, unless it clearly appears that the verdict was not based in any part on such testimony.

In Error to the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Action at law by the Pensacola Maritime Corporation against the Texas Company. Judgment for plaintiff, and defendant brings error. Reversed.

Harry T. Klein, of New York City, E. C. Maxwell, of Pensacola, Fla., and Palmer Pillans, of Mobile, Ala., for plaintiff in error.

Francis B. Carter, of Pensacola, Fla., and John P. Stokes, of Miami, Fla., for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

---

⚌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. This case is here a third time on a writ of error sued out by the Texas Company from a judgment against it in an action brought by the Pensacola Maritime Corporation. The suit is for the breach of a written contract for the sale at stated prices by defendant to plaintiff of "all the bunker oil sold by the purchaser [the plaintiff] for delivery to vessels at the port of Pensacola, Fla., from August 1, 1919, to September 30, 1920"; the contract obligating defendant to sell not exceeding 20,000 barrels of oil a month, but providing for the plaintiff, by giving prescribed notices, acquiring the right to have the contract cover additional amounts of oil sold by it up to a total of 50,-000 barrels a month. The breach complained of was effected by the defendant, on May 3, 1920, notifying plaintiff that the contract was canceled, and that defendant refused thereafter to furnish plaintiff any oil. The plaintiff on May 4, 1920, gave the notices which, under the terms of the contract, entitled it to buy 50,000 barrels a month sold by it pursuant to the contract, and claimed that, but for the breach of the contract, it would have sold at greatly higher prices than those fixed by the contract all of the oil it was entitled to buy from the defendant. For the rulings heretofore made by this court in this case reference is made to the reports of the case when it was here on former writs of error. Texas Company v. Pensacola Maritime Corporation, 279 Fed. 19, 24 A. L. R. 1336; Id., 292 Fed. 61.

In the last trial the plaintiff, to support its claim that the breach of the contract caused it to lose profits which it would have realized, but for such breach, introduced evidence as to the volume of, and the profits realized from, its bunker oil selling business at Pensacola up to the date of the breach of the contract, as to contracts made by it prior to the breach for such sales of oil at increased prices, and which were in force at that time and could not be complied with by plaintiff because of the breach, and as to opportunities presented to it after the breach to make such sales at prices greatly in excess of those stated in the contract. Included in the evidence which was relied on as proof of the making to the plaintiff after the breach of the contract of firm offers for the purchase of oil which were declined by plaintiff because of its inability to procure oil was testimony as to three transactions to which the plaintiff was a party; one of those transactions being with John A. Merritt & Co., with reference to 50,000 barrels for each of the months of August and September, 1920, at $3.25 a barrel, another being with the United States Shipping Board, through R. S. Ingersoll, its chief inspector at New Orleans, with reference to 50,000 barrels for August and September, at $3.75 a barrel, and the other being with the J. H. W. Steele Company, with reference to 50,000 barrels for each of the months of June, July, August, and September. The evidence as to one of those three transactions was necessary to support the verdict upon which the judgment under review was based. The defendant separately excepted to the court's refusal to give to the jury the following requested written charges:

"The jury is instructed that the plaintiff is entitled to recover as damages in this case, in addition to the amount of the difference between the contract and resale price on completed sales and the amounts properly claimed against plaintiff by its subpurchasers and proven by the evidence, only such antici-

pated profits as the jury may find from the evidence, with reasonable certainty, would have resulted to the plaintiff, had the defendant not canceled said contract of sale, but not to exceed in any one month of the remaining contract term 20,000 barrels per month.    *    *    *

"The jury in finding the amount of damages recoverable by plaintiff, cannot take into consideration the testimony relating to the so-called tentative Steele contract, as the evidence shows that the Steele contract would never have been consummated.    *    *    *

"The jury cannot base any finding for anticipated profits on the negotiations with Mr. Ingersoll, the United States Shipping Board representative at New Orleans.    *    *    *

"The court charges the jury that under the evidence in this case you cannot find that plaintiff had a firm offer from the United States Shipping Board office at New Orleans."

Testimony in regard to the just-mentioned Merritt & Co., and Shipping Board transactions was given in the last trial by witnesses for the plaintiff who testified in the second trial in regard to those transactions. In the last trial there was uncontradicted evidence to the effect that the version then given by each of those witnesses of the transaction about which he testified was materially different from his version of such transaction given in his testimony in the second trial of the case; that the previously given testimony of each of the witnesses referred to did not indicate that a firm offer for the purchase of oil was made to plaintiff. In the last trial a witness who was a representative of Merritt & Co. testified to the effect that in July, 1920, upon being informed by a representative of the plaintiff of a plan by which the latter could get oil for sale at Pensacola, he (witness) told plaintiff's representative that Merritt & Co. would take 50,000 barrels or more of bunker oil for August and September, at $3.25 a barrel. In the last trial a witness who was a representative of the plaintiff testified to the effect that in late July, 1920, in the office of the Shipping Board in New Orleans, Mr. Ingersoll, then chief inspector, offered witness $3.75 a barrel for 50,000 barrels of fuel oil for each of the months of August and September, 1920.

[1] We are of opinion that the testimony of each of the two witnesses just referred to tended to prove the receipt by plaintiff of a firm offer for the purchase of oil in the amounts stated by the witnesses, respectively. While the evidence as to the authority of Mr. Ingersoll to make in behalf of his principal such an offer as was deposed to was equivocal, a finding that under the unusual conditions then existing he would not have exceeded his authority by making such an offer was not without support in evidence adduced. We are not of opinion that the court is chargeable with error for refusing requested instructions, the giving of which would have had the effect of forbidding the jury to make findings based on the testimony as to the making of such offers to the plaintiff. The fact that it appeared that the previously given testimony of each of the two witnesses mentioned as to the same transactions had no tendency to prove the making of a definite offer to the plaintiff for the purchase of oil did not have the effect of requiring the court practically to withdraw from the consideration of the jury the last given testimony of those witnesses as to the making of such offers. Primarily the question of the credibility of that testimony was one for the jury.

We do not think that the evidence as to the Steele Company transaction had any tendency to prove that that company made a firm offer to buy oil from the plaintiff, or that defendant's breach of the contract deprived plaintiff of an opportunity to realize profits on a sale of oil to the Steele Company. The evidence as to that transaction was to the following effect: Prior to and at the time of defendant's breach of the contract, negotiations for the sale of bunker oil to the Steele Company at Pensacola were in progress between representatives of the plaintiff and Mr. Semmes Steele, an official of the Steele Company, which had its principal office at Galveston, Tex., and, under a contract with the Shipping Board, was operating a number of oil-burning Shipping Board vessels. About the time of defendant's breach of its contract, plaintiff's representative submitted to Mr. Steele in New York a draft of a proposed contract for the sale of oil. That instrument was not satisfactory to Mr. Steele. After Mr. Steele's return to Galveston from New York, an amended draft of a proposed contract was submitted to him. That instrument also was unsatisfactory to Mr. Steele. Thereupon Mr. Steele had a lawyer in Galveston to prepare a draft of a contract which was satisfactory to him, and which was to be submitted to plaintiff for consideration. That instrument, pursuant to the request of plaintiff's representative, was mailed at Galveston to plaintiff at Pensacola on May 18, 1920. On the same day Mr. Steele sent by mail to plaintiff's representative, with whom he had been negotiating, a letter which stated as follows:

"It is with much regret that we are compelled to advise you of our inability to either negotiate further with you or consummate the contract we have been working on the past week or so. This has been brought about by reason of the fact that the United States Shipping Board will not look with favor upon our entering into any private fuel contract at any port. Inasmuch as all of the oil-burning vessels we are operating are Shipping Board vessels there is nothing left for us to do but to temporarily call these negotiations off. As advised you this morning, we are endeavoring to have the Shipping Board look with favor upon our negotiating independently of them for fuel oil. In the event the Shipping Board offer no objections, we shall be agreeable to reopen negotiations along the lines suggested in the redrafted contract, copy of which is now in your possession."

Mr. Steele was not informed of the defendant's breach of its contract until after his negotiations with plaintiff were ended as above stated. The uncontradicted evidence as to the Steele Company transaction was to the effect that it did not involve the making of an offer to the plaintiff, which could have resulted in a contract by the latter's acceptance, as the offer was withdrawn before it could have reached plaintiff. That evidence furnished no basis for a finding that defendant's breach of its contract caused plaintiff to lose profits which, but for such breach, it could and would have realized on a sale of oil to the Steele Company. The court erred in refusing to give the above set out requested charge in reference to that evidence. If the verdict, as to part of the amount of it, was based on the evidence as to the Steele Company transaction, to that extent it awarded to plaintiff damages for supposed loss of profits which the evidence had no tendency to prove would or could have been realized by the plaintiff, if the defendant had continued to comply with its contract obligations. So far as the verdict

rendered was based on that evidence, the judgment under review would have the effect, not of enabling the plaintiff to get reimbursement for a loss due to defendant's breach of the contract, but of conferring on plaintiff a benefit which, so far as the evidence indicated, would not have resulted from performance of the contract.

[2] In behalf of the plaintiff it was contended that, if the just-mentioned ruling was erroneous, the error was a harmless one. The contention to that effect was sought to be sustained on the ground that it may be inferred from the record that the verdict was based on evidence other than that in regard to the Steele Company transaction. The argument made in behalf of that position is not at all convincing. Nothing contained in the record excludes the inference that the verdict rendered included an award of damages for loss of profits based on the evidence as to the Steele Company transaction. The amount of the verdict is as consistent with the theory that such evidence was in part the basis of the jury's action as with the theory that the verdict was based exclusively on other evidence upon which it might have been based. It would be a mere guess or conjecture to conclude that the jury, in determining the amount of the verdict, was not influenced by a consideration of the evidence as to the Steele Company transaction. It seems to be at least as probable that the jury's award of damages was based in part on that evidence, which consisted of testimony given in depositions and which remained unchanged, as that such award was based in part on testimony given by witnesses who were shown to have given in a former trial testimony which indicated that the transactions about which they testified did not involve the making of any firm or definite offer to the plaintiff for the purchase of oil.

Furthermore, there is ground for inferring that the verdict might not have been permitted to stand for the amount for which it was rendered, if the court had not reached the conclusion which was evidenced by its above-mentioned ruling as to the evidence in regard to the Steele Company transaction. It well may be that the propriety of the amount of the award of damages might have been questioned by the court of its own motion, or at the instance of the defendant, if the verdict had been rendered under circumstances which made it plain that it included an award of damages based on testimony given by witnesses whose previously given testimony furnished no basis for such an award. The record indicates that the evidence as to the Steele Company transaction was submitted to the jury under circumstances warranting the consideration of it as a basis for an award of damages, and it cannot properly be inferred that that evidence was without influence in the determination of the amount of the verdict upon which the judgment under review was founded.

We think there is no occasion to consider other rulings which have been assigned as errors. Some of those rulings were in conformity with conclusions stated by this court when the case was here on former writs of error. Other rulings complained of were in regard to occurrences in the last trial, which are not likely to be repeated in a future trial. Because of the above-mentioned error, the judgment is reversed, and the cause is remanded, with direction that a new trial be granted.

Reversed.